# Marks *v.* Cowles *et al.*

### Supplemental bill to Vacate sale of Lands, under Decree which has been Reversed.

61   299
116   507
116   592

61   299
129   618

61   299
138   592,

1. *Judicial sale; when not affected by reversal of decree under which it is made.*—The title of a stranger purchasing lands at judicial sale under an erroneous judgment or decree, will not be defeated or impaired by a subsequent reversal of the decree.

2. *Same; when reversal defeats.*—Where a party to the decree, purchases under an erroneous judgment or decree in his own favor, he acquires a defeasible title only, which fails upon a subsequent reversal of each judgment or decree.

3. *Same.*—The assignee of one who purchased under an erroneous decree in his own favor, stands in the shoes of his vendor, and a subsequent reversal defeats his title also; and the judgment or decree being the foundation of the title, the assignee or vendee of such purchaser is bound to take notice of, and therefore not entitled to protection as a *bona fide,* for value, without notice.

APPEAL from the Chancery Court of Montgomery.

Heard before Hon. H. AUSTILL.

The facts of this case were fully reported when it was here on former appeals.—See *Cowles v. Marks,* 47 Ala. 612, and *Marks v. Cowles,* 53 Ala. 499.

The facts, so far as material to the question here involved, are as follows: The original bill was filed by appellant's testator against George Cowles, and Laura, his wife, to subject certain lands to the payment of unpaid purchase-money. Laura, being a married woman at the time of the purchase, filed a cross-bill, asserting a right to charge the lands with the reimbursement to her of moneys of her statutory estate used in making the cash payment on the lands. The Chancery Court having denied her such relief, she appealed to this court, which reversed the decree of the Chancery Court. In accordance with the principles announced in the opinion on the first appeal, the Chancery Court in June, 1872, rendered a decree for the sale of the lands. The lands were sold under the decree, on the first Monday in October, 1872, and bought by the defendant, Laura Cowles. On the 20th day of December, 1872, Marks took an appeal to this court, but did not supersede the execution of the decree. On the 16th day of May, 1873, the sale was confirmed, and conveyance duly executed to the purchaser. On the 9th day

of September, 1875, Singer purchased the lands from Cowles and wife, received a conveyance, and holds possession thereunder. On the 16th day of December, 1875, this court reversed the decree under which the sale was made. After this, Marks having died, suit was revived in the name of appellant as executrix. Appellant then made a motion to set aside the sale, and Singer filed a petition alleging his interest, and that he had purchased *bona fide*, &c., and prayed to be allowed to appear and resist the motion. The chancellor denied the motion to vacate the sale, but without prejudice to the right to file a supplemental bill, which he indicated was the proper practice.

Appellant thereupon filed a supplemental bill, alleging the foregoing facts, praying that the sale be vacated, and that Singer be decreed to surrender possession.

The answer of Singer, which was adopted by the other defendants, admits the facts as before stated. It states further, that Singer has paid a fair price for the lands; that he lived nearly one hundred miles from Montgomery; that he had no knowledge of the pending appeal, or the rights or claims of complainant in the premises, and that he was induced to purchase after seeing the register's deed to said Laura, upon the opinion and advice of her counsel that she had a good title, &c.

No testimony seems to have been offered as to the matter of the supplemental bill, and the whole matter appears to have been submitted in the supplemental bill and answers.

The chancellor being of opinion that Singer's title was not affected by the reversal, and the case not being one justifying a personal decree, decreed that appellant was not entitled to further relief, and ordered the cause to be dropped from the docket.

P. T. SAYRE, for appellant.—If Mrs. Cowles had retained the lands, beyond all question, her title would have been destroyed by the reversal of the decree. In *Dupuy v. Roebuck*, 7 Ala. 486, it is said: " A judgment reversed, becomes mere waste paper, and the rights of the party immediately on reversal, are restored to the same situation in which they were prior to the pronouncing of the judgment so reversed." See *Barrenger v. Burke*, 21 Ala. 771.

This being the law, the sale which was made, must fall with the reversal.

Can Singer occupy any better position than Mrs. Cowles? He was bound to inquire into her title. He was chargeable

[Marks v. Cowles.]

with notice as to the manner in which she acquired title. *Johnson v. Thweatt*, 18 Ala. 742. And he was chargeable with notice that an appeal was pending when he purchased. The fact that he was advised by lawyers that Mrs. Cowles could make a good title, can afford him no relief. It is his misfortune if his lawyers gave wrong advice.

At the very time he purchased, the case was pending in the Supreme Court, and it involved the particular property, so that the doctrine of *lis pendens*, must necessarily apply. *Bishop of Winchester v. Payne*, 2 Vesey, 195; *Murray v. Banon*, 1 John. Ch. 576; *Harris v. Carter*, 3 Stew. 238; *Jackson v. Caldwell*, 1 Cow. 649; *Taylor v. Thompson*, 5 Pet. 370; *Doe ex. dem. Chaudron v. Meyer*, 8 Ala. 570; *Boling v. Carter*, 9 Ala. 921; *Hoole v. Paullin*, 22 Ala. 190; *Spencer v. Goodwin*, 30 Ala. 338; *Creighton v. Payne*, 2 Ala. 158; *Trammell v. Simmons*, 8 Ala. 271; *Carter v. P. & M. Bank*, 22 Ala. 743.

J. T. HOLTZCLAW, and BRAGG & THORINGTON, *contra*. We insist that under the facts, Singer was a purchaser for value, without notice, and is not affected by subsequent reversal of the decree.—See Reese on Judicial Sales, § 431, note 1, and authorities cited.

The authorities are thus stated by their author to have been correctly announced by the Supreme Court of Illinois, as follows:

" If the court has jurisdiction to render the judgment or to pronounce the decree; if it has jurisdiction over the parties and the subject-matter, then upon principles of universal law, *acts done and rights acquired by third persons under the authority of the judgment or decree, and while it remains in force, must be sustained, notwithstanding its subsequent reversal.*"—Rorer on Judicial Sales, § 431; 36 Ill. 319; 11 Ill. 523; 26 Ill. 179; 2 How. 340; 14 Ohio St. 350; 3 Ohio St. 389; see, to same effect, Brickell's Digest, p. 773, § 1771, and authorities there collected.

It is undoubted, and not denied, that the Chancery Court had jurisdiction of the subject-matter and the parties.

We insist that the doctrine of *pendente lite* can not be invoked here, and has no application to the facts of this case. Here was a sale by the court of the subject-matter in controversy upon a decree regularly rendered, which sale was duly confirmed and a deed made to the purchaser, and a stranger, upon the faith of this judicial action, parts with his money, takes a conveyance, and can not now be placed in *statu quo*.

[Marks v. Cowles.]

*Pendente lite* can be invoked when a party to a pending suit sells or disposes of his interest, which can not, during litigation, change the rights of the parties, or the power of the court over the subject-matter of the suit.

Here the *court* sells and conveys, not only the interest of one party, but the subject-matter of the suit itself, and the interest of each and all the parties thereto, and in the hands of a *bona fide* purchaser for value. That subject-matter is the power of the court to disturb. It is a judicial sale that no subsequent reversal affects.— *Wyman v. Campbell*, 8 Port. 218; *Pilfield et al. v. Guzzer*, 2 Ala. 328; *Vorhies v. Bank U. S.* 10 Peters, 478.

The court declared, in 47 Ala. 612, Mrs. Cowles' equity superior to Marks'. Following that decision is the decree, sale and confirmation of the identical property the subject-matter of this suit; and while existing as the law of the land, Singer purchases for value. We say he had a right to rely upon the law as adjudicated by the highest tribunal in the land. *Gilpeche et al. v. City of Dubuque*, 1 Wall. 175; *The City v. Lamsen*, 9 Wall. 478.

BRICKELL, C. J.—Waiving all consideration of the mode of procedure in the court of chancery, adopted by order of the court, and of the regularity of which, no complaint is made, we direct our attention exclusively to the questions, on which the rights of the parties finally depend. The principle is, whether a purchaser from a party to a pending appeal, of lands, the party had acquired under a sale made in execution of the decree, having notice actual or constructive of the appeal, obtains a title which will not be defeated by the reversal of the decree.

The general principle, that a judgment or decree reversed by a competent jurisdiction, ceases to exist as between the parties—in the strong language of some authorities, *becomes mere waste paper*—and that every right and interest springing out of, and dependent upon it, acquired by the party in whose favor it wes rendered, shares its fate and falls with it, has been frequently asserted, and underlies numerous decisions of this court.—*Judson v. Eslava*, Minor, 71; *Duncan v. Ware*, 5 St. & P. 119; *Dupuy v. Roebuck*, 7 Ala. 484; *Burdine v. Roper*, ib. 466; *Stewart v. Conner*, 9 Ala. 803; *Simmons v. Price*, 18 Ala. 405 (S. C); 21 Ala. 337; *Barringer v. Burke*, 21 Ala. 765; *Williams v. Simmons*, 22 Ala. 425; *Paulling v. Watson*, 26 Ala. 205; *Ewing v. Peck*, ib. 413. The reversal deprives the judgment or decree of all force or

benefit in favor of the party obtaining it, and of all capacity to injure the party against whom it was rendered. For acts, which would have been trespasses, without the authority of the judgment, done while it was of force, and for which it then afforded justification, it may continue after reversal to protect the party. Thus far, he may be permitted to use the judgment defensively, but he can not use it offensively, nor so as to make it a source of profit to himself, or of injury to his adversary.

Restitution of all advantages the party obtaining the judgment may have acquired by its enforcement, is a consequence of the reversal. The restoration of the parties to the plight and condition in which they were, at and prior to the rendition of the erroneous judgment, it is the spirit and policy of the law to promote and compel.—3 Bac. Ab. Error (m. 3), 389; Freeman on Judgments, § 482. "On the reversal of the judgment," said the Supreme Court of the United States, "the law raises an obligation on the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost. And the mode of proceeding to effect this object must be regulated according to circumstances."—*Bank of U. S. v. Bank of Washington*, 6 Pet. 17. The party executes the judgment of his own election, at his own peril, and must be presumed to intend assuming the duty and liability of restitution, if the judgment proves erroneous and is subsequently reversed.

The rule seems to be established in all the States where the question has been the subject of judicial decision, with perhaps one or two exceptions, that a party to an erroneous judgment or decree, purchasing at a judicial sale made under it, acquires only a defeasible title, which falls with the subsequent reversal of the judgment or decree.—Freeman on Judgments, § 482; Freeman on Executions, § 347, (the authorities being collected and referred to in the notes); *Galpin v. Page*, 18 Wall. 374; *Jackson v. Caldwell*, 1 Cowen, 644; *Wanebaugh v. Gates*, 4 Seld. (8 N. Y.) 138. In the case of *Reynolds v. Harris*, 14 Cal. 679, discussing the question, BALDWIN, J., said: "It is hard to see why a man buying in another's property sold under a judgment rendered according to the forms of law, but against the principles of law, should obtain any advantage from his own judgment thus improperly obtained. It is true that as the error was the error of the judge, he should not lose by it; but it is not so clear that he should make a profit by it. It is equally clear, that the defendant should not suffer by any such im-

proper judgment, if it can be avoided in consistency with a due respect to the rights of others. It would appear to be exact equity to set aside acts which have been illegally done, if this can be without injury to third persons; so that all parties whom the proceedings affect stand in the same position after as before the act so done."

When, however, a stranger to the judgment or decree, the execution of which has not been suspended in the mode prescribed by the statute, becomes a purchaser under it, either prior to, on pending an appeal from it, his title will not be impaired by a subsequent reversal, the court having jurisdiction to render the judgment or decree.— *Wyman v. Campbell*, 6 Port. 219; *Perkins v. Winter*, 7 Ala. 855; *Evans v. Matthews*, 8 Ala. 99; *Hoard v. Hoard*, (opinion of WALKER, C. J.), 41 Ala. 601; Freeman on Judgments, § 484; Freeman on Executions, § 345. The reasons for the distinction in favor of a stranger to the judgment or decree, and against a party to it, seem obvious. In *Jackson v. Caldwell, supra*, it was said: "The same reasons of policy which secure to an innocent purchaser a valid title, do not exist when the judgment creditor becomes the purchaser; and it would be the height of injustice to allow the party, guilty of irregularity to take advantage of it." The law permitting the execution of judgments or decrees which have not been superseded, pending an appeal, or before an appeal may have been taken to obtain a reversal, it would be inconsistent with its fixed policy to inspire confidence in judicial sales, to encourage biddings at them, and to secure innocent purchasers in all the advantages fairly derived from them, to suffer any error or irregularity which may have intervened to work injury to them. All purchasers must at their peril inquire into and ascertain the jurisdiction of the court. Scanning the record in search of errors, is not a duty, the law can with safety impose on those who are not parties to the record. If errors exist they are the errors of the court, which they had no agency in producing, and from which no benefit can accrue to them. They have a right to repose with confidence and security, on the judgment or decree, pronounced by a court of competent jurisdiction. If a contrary doctrine prevailed, there would be a want of confidence, uncertainty and insecurity in judicial sales. The sacrifice of property to the greed of speculation, or to the most adventurous bidder, would often be the result. And in a great measure, it would prevent such sales until the lapse of time barred an appeal, and invite a resort to appeals, as the means of obtaining the

delay of a suspension of execution, without the security which the law exacts as a condition precedent to suspension. The protection of strangers in purchases at judicial sales, when protection will not be afforded the parties, or to those who may be cognizant of irregularities in the process under which they are made, is a very general doctrine in this State. An example is, a purchase of lands under an execution which has been satisfied, or in which the sheriff making the sale may have a latent interest.—*Boren v. McGehee*, 6 Port. 432. The party suing out the process, or the stranger cognizant of its irregularity and abuse, can not in good conscience claim any right or derive any benefit from it. If right or benefit was accorded them, it would be suffering them to take advantage of their own wrong, and extorting a benefit from him whom they had wronged. The stranger is cognizant of, intends no wrong, and is relying on the validity of process, which emanates from proper authority, and is fair and regular on its face. From the irregularity, he derives no benefit, and may suffer loss, if protection in the purchase was withheld from him.

It results from these principles that when a party becomes a purchaser of lands under an erroneous judgment or decree, rendered in his own favor, it is at the peril of having his title defeated by a subsequent reversal. The defeasible quality of his title is engrafted upon it by operation of law, of which ignorance can not be claimed by those who subsequently deal with him. If the words of his title papers expressed the defeasible quality, they would express no more than the law declares. The sound maxim of the common law is, *nemo potest plus juris in alium transferre quam ipse habet.* When the owner of a determinable fee conveys in fee, the determinable quality of the estate follows the transfer.—4 Kent, 10; Broom's Legal Maxims, 303, top p. Practically, the principle which prevails in this State, is, that all conveyances pass the estate of the grantor, and no more— whatever are its incidents operating to defeat, or whatever contingencies may terminate it, attend it in the hands of the grantee. The legal estate may be subject to equities, which are not allowed to prevail against a *bona fide* purchaser—a purchaser for a valuable consideration, acquiring it without notice. The equity affecting the legal estate, may be older than the equity of the purchaser, but in no other respect, can it be of greater dignity, or more binding in conscience. Equity then following the maxim that when equities are equal, the law must prevail, will not disturb or displace the

legal estate. But with this exception, and an exception of the protection afforded by statutes of registration, the general principle is, that derivative titles, can not rise above and superior to their original. They do not improve by mere transfer, whether the tranfer is the act of the law, or the act of the parties.

We have found but few authorities in which the question presented, has been considered. The first of these is, *Bickerstaff v. Dellinger*, 1 Murph. 272, in which the principle is asserted broadly, that upon the reversal of a judgment, the plaintiff in error is not entitled to restitution from the defendant in error, or from his assignee, of lands sold under an execution issuing on the judgment. The case is distinguishable from the present, in which the decree ordered and was the authority for the sale of the particular lands. The court admit that at common law, if there had been an extent, the plaintiff in error would have been restored to the lands upon which the levy was made, though the judgment creditor had parted with them to a purchaser. The reason of which is, that the title of the creditor depended upon the validity of the judgment, and fails upon a reversal. *All who purchase from him must take this risk, and there is no greater hardship in this than in any other case of failure of title. He may take care to be secured by the covenants in his deed; and, if he distrusts the ability of the grantor, he need not purchase.*—*Bryant v. Fairfield*, 51 Maine, 154; *Delano v. Wilde*, 11 Gray, 17; *Cummings v. Noyer*, 10 Mass. 434; *Little v. Bunce*, 7 N. H. 485; *Goodyere v. Ince*, Cro. Jac. 246. In this last case ALL THE COURT held, there is a difference between a sale and delivery upon an *elegit* to the party himself, and a sale upon a *fieri facias* to a stranger. It seems to us rather a shadowy than a substantial difference, so far as this question is concerned, between the extent of a debtor's lands by a writ of *elegit*, and a sale upon writs of *fieri facias*, now that lands are subjected to sale for the satisfaction of judgments, and such writs are framed so as to confer authority to levy and sell alike goods and chattels, and lands and tenements. When lands were extended by *elegit*, the judgment was of the essence of the title—an indispensable muniment, and so it remains to-day when there is a sale and conveyance upon a writ of *fieri facias*. It must be shown to support an action by the purchaser for the recovery of the lands, or to maintain his possession, if that is assailed by the party to whose title he claims by operation of the judgment to have succeeded. It is upon a distinction between an extent, and a

[Marks v. Cowles.]

sale, the court proceeded, and it seems this distinction would have preserved the title of the party as well as that of his alienee. As to the party, the case is in conflict with the current of authority. The same remarks are applicable to the case of *McAusland v. Pundt*, 1 Neb. 211, in which the same doctrine is held, the court declining to recognize any distinction between a purchase by a party, and a purchase by a stranger. In *Gentian v. Wisely*, 47 Ill. 433, the court protected the title of an *innocent* assignee of a party, purchasing at sheriff's sale under a judgment at law, though recognizing the distinction between a purchase at a judicial sale, by a party, and a purchase by a stranger. In *McCormick v. McClure*, 6 Black. 466; *Taylor v. Boyd*, 3 Ohio, 353; *Ludlow v. Kidd*, ib. 541, the purchases were made by a stranger, from the party purchasing under decrees of sale, before citation in error was served, and his title was protected against a subsequent reversal. If the principle is admitted, and it is admitted in the courts of Illinois and Ohio, and seems to be in the courts of Indiana, that a party purchasing under his own judgment or decree, acquires but a defeasible title, while a stranger will acquire an indefeasible title, it is difficult to understand how there can be an *innocent* purchaser from the party, entitled to protection which would not be extended to the party himself. We mean a purchaser without notice, actual or constructive, of the defeasible quality of the title. There can be no principle touching so nearly men's estates, more firmly established, than that a purchaser has notice of everything appearing clearly on the face of the deeds or instruments which constitute his title, forming an integral part of it. The law conclusively imputes the notice, and neither averment or proof to the contrary, can be heard. His ignorance of all that certainly appears on the face of the title papers, affecting the quality or duration of the estate, can be superinduced only by his negligence, and of that negligence, it would be unwise and unjust to suffer him to take advantage. — *Witter v. Dudley*, 46 Ala. 664; *Johnson v. Thweatt*, 18 Ala. 741, (American note to *Le Neve v. Le Neve*, 4th ed.) 2 Lead. Eq. Cases, 189, top p. The judgment or decree, must be shown necessarily as an indispensable element of the title of the party, on the face of the title papers. And when it is shown, the defeasible quality of the title appears, of which the vendee is bound to take notice. Now, in this case, the deed to Singer, discloses on its face, as the source of the title of his vendors, *the decree of the Chancery Court of Montgomery, in the case of Cowles v. Marks, under*

*which said land was purchased by Laura S. Cowles, as her
separate estate.* His attention was drawn directly to the de-
cree, and a very casual examination of the record would
have disclosed to him the duration and quality of the estate
Mrs. Cowles had acquired, and the fact that an appeal was
then pending from the decree, which might result in a re-
versal annulling her title. If he did not make the inquiry,—
if he relied on the assertions of the vendors, on the opinions
of others, as to the character of the title, he must abide the
consequences. The right of a party aggrieved by an errone-
ous judgment, to a restoration to the condition in which he
was, when it was rendered,—the prohibition against the use
of such judgment by his adversary, so as to derive advan-
tages he can not restore, would be of little avail, if through
the mechanism of an alienation to a party bound to know
that the right and prohibition exists, it could be defeated.

The Supreme Court of California, the case of *Reynolds v.
Harris, supra,* hold that the assignee of the party, stands in
the position and succeeds only to the rights of the party.
The same principle is asserted in *Twogood v. Franklin,* 27
Iowa, 239, under a statute declaring that the property ac-
quired by a *bona fide* purchaser under a judgment subse-
quently reversed shall not be affected by such reversal. We
can not perceive that a subsequent purchaser from the party,
can in right or on any principle of policy, claim the protec-
tion which is extended to a stranger purchasing at a judicial
sale. The prevention of the sacrifices of property at such
sales, the security of titles acquired at them, does not require
it. The sale is an accomplished fact, and the sacrifice, as it
has been said, is realized or avoided. The party would sim-
ply be authorized to transfer a better and higher title than
he acquired. Collusive transfers, defeating right and justice,
would be stimulated and encouraged. And the conservative
principle, intended for the protection of parties aggrieved by
erroneous judgments or decrees, from sustaining irreparable
loss, would be practically nullified. It is no answer to say,
that he may recover of his adversary the proceeds of sale.
The adversary may, as in this case, be unable to respond,
and he loses his property without fault on his part. The
stranger who purchases may say, you ought to have super-
seded the judgment, and thus prevented the sale, and saved
me from parting with money, which may not be reclaimed.
The adversary, can say only, by the use of an unjust judg-
ment rendered at my instance against you, *in invitum,* I have
obtained an advantage, which I will secure by a sale to

another, and the other though he derives it from me, will obtain a better title than I had. We can not declare this to be the law of the land.

There is another point of view, in which the claim of Singer to protection must fail. The allegation on which his right to protection is rested—its very foundation and corner stone, is, that he is a *bona fide* purchaser, for a valuable consideration, without notice. His answer averring these facts is not responsive to the bill—the matter is rather in confession and avoidance of that which is averred by the complainant. It is scarcely necessary to say, the burden of proof was upon him to establish the allegation.—2 Lead. Eq. Cases, 101. No proof in support of it was given ; and though the cause was heard on bill and answer without testimony, the complainant having waived a verified answer, the answer is mere pleading, even so far as it is responsive.—Code of 1876, § 3786.

The result is the decree of the chancellor must be reversed, and the proper decree will be here rendered. It is therefore ordered, adjudged and decreed that the sale of the lands to the appellee, Laura S. Cowles, made by the register under the decree in this cause, which was reversed in this court, at the December term, 1875, be and the same is hereby vacated and annulled, and the said Laura S. Cowles, and her husband, Thomas W. Cowles, are required within ten days after service of notice of this decree, and a demand therefor, to surrender to the register of the Court of Chancery, the conveyance made to her on the aforesaid sale by said register, and the register will cancel the same, and file it with the papers in this cause.

It is further ordered, adjudged and decreed that the complainant be let into possession of the lands described in the original bill, and for this purpose, if the parties in possession refuse to surrender the same, the register will on the application of the complainant issue a writ of possession against such parties, directed *to any sheriff of the State of Alabama*, commanding him to place the complainant in possession.

It is further ordered, adjudged and decreed, that the next friend of the appellee, Laura S. Cowles, pay the costs of the cross-bill to be taxed by the register, and that the appellee, Thomas W. Cowles, pay the costs of the original bill, and the appellee, J. E. Singer, will pay the costs of the supplemental bill, and the costs of this appeal.