[S. F. No. 1580. Department One.—January 11, 1900.]

CHARLES ASHTON et al., Executors, etc., Respondents, v. ELIZABETH A. HEYDENFELDT, Appellant.

ESTATES OF DECEASED PERSONS—REVERSAL OF DECREE OF DISTRIBUTION—RECOVERY BY EXECUTORS FROM DISTRIBUTEE—PAYMENT OF PERSONAL DEBTS.—Upon the reversal of a decree of distribution, the assets of the estate paid to the distributee under the decree may be recovered back by the executors. It is no defense to such recovery that a portion of the assets distributed were applied by the distributee in payment of personal debts, and the payees are not required to make restitution.

ID. — PROMPT COMPLIANCE WITH DECREE BY EXECUTORS — PRESUMPTION — TITLE OF DISTRIBUTEE AND PAYEES. — The executors did not act at their peril in promptly complying with the decree of distribution before the expiration of the time for appeal; but they and all parties interested were entitled to presume that the judgment of distribution was right and would be affirmed. The distributee had a perfect title to the money distributed, and might transfer title thereto by payment to personal creditors at any time prior to an actual reversal of the judgment, which alone could destroy or impair the distributee's right.

ID. — PAYMENT TO CREDITORS — TRANSFER OF BANK CREDITS. — A payment to creditors of the distributee is effected by a transfer of bank credits in a savings bank, and the opening of a new account by the bank and the issuance of a bank-book in the name of each creditor so paid.

ID. — PERSONAL DEBTS TO EXECUTORS — SETTLEMENT AND PAYMENT — RELEASE OF MORTGAGE. — A transfer of bank accounts in the amount of personal debts of the distributee to each of the executors, accompanied by a release of a mortgage securing the same, shows a settlement and payment of such debts by the distributee; and the amount thereof cannot be deducted from a recovery by the executors against the distributee, after reversal of the decree of distribution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Knight & Heggerty, and George D. Collins, for Appellant.

The money retained by the executors and appropriated in settlement of defendant's indebtedness to them individually, is not deemed paid to the defendant, and cannot be recovered from the defendant by way of restitution, as money had and received to the use of the executors. (*Wharton v. Walker*, 4 Barn. & C. 163; *Lee v. Merrett*, 8 Q. B. 818, 820; *Degraw v. Elmore*, 50 N. Y. 1; *National Trust Co. v. Gleason*, 77 N. Y. 400; 33 Am. Rep. 632; *McClure v. Law*, 47 N. Y. Supp. 84, 20 N. Y. App. Div. 459; *Seymour v. Spring Forest etc. Assn.*, 38 N. Y. Supp. 734; 4 N. Y. App. Div. 359; *Rush v. Good*, 14 Serg. & R. 230; *Herrick v. Hodges*, 13 Cal. 432; *Brent v. Davis*, 9 Md. 217; *Murray v. McHugh*, 9 Cush. 164, 166; *Guthrie v. Hyatt*, 1 Harr. (Del.) 447.) The executors received the money at

their peril, subject to reversal of the judgment, and are themselves liable to restitution. (*Reynolds v. Harris,* 14 Cal. 681, 682; 76 Am. Dec. 459; *Ex parte Morris,* 9 Wall. 605, 607; *Marks v. Cowles,* 61 Ala. 299, 303; *Adams v. Odom,* 74 Tex. 206; 15 Am. St. Rep. 827; 2 Perry on Trusts, sec. 827; Civ. Code, sec. 2243.) The fact that appellant signed the receipt. for $18,665 is of no consequence. (*Comptoir etc. v. Dresbach,* 78 Cal. 25, 26, 28; *Hawley v. Bader,* 15 Cal. 44.) The executors have no right to offset the defendant's indebtedness to them as against their liability to the estate. (*Freeman v. Lomas,* 5 Eng. L. & Eq. 120; *Bondurant v. Thompson,* 15 Ala. 202; *Irving v. De Kay,* 10 Paige, 319, 324; *Lancaster v. Allen,* 1 Head, 326; *Estate of Watkins,* 121 Cal. 327; *Hinkle v. Eichelberger,* 2 Pa. St. 484.)

Evans & Meredith, and Lester H. Jacobs, for Respondents.

The law looks at the substance of the transaction in determining its character. (*Herman v. Hecht,* 116 Cal. 553.) The transfer of bank accounts, under the circumstances appearing, was a transfer of money, and the whole transaction must be considered as if the defendant had received and paid out the money distributed to her creditors. (2 Greenleaf on Evidence, sec. 117; 2 Ency. of Pl. & Pr. 1016; *Ward v. Evans,* 2 Ld. Raym. 928; *Wade v. Wilson,* 1 East, 195; *Clark v. Pinney,* 6 Cow. 298; *Garr v. Martin,* 20 N. Y. 306; *Beardsley v. Root,* 11 Johns. 464; 6 Am. Dec. 386, and cases cited in note 391.) All that was done under the decree prior to its reversal was valid and binding. (*Bank of United States v. Bank of Washington,* 6 Pet. 8; *Florida Cent. R. R. Co. v. Bisbee,* 18 Fla. 60; *Langley v. Warner,* 3 N. Y. 327; *Butcher v. Henning,* 90 Hun, 565; *Flower v. Beveridge,* 161 Ill. 53.) Executors and trustees are protected in obeying an order of the court. (*Goldtree v. Thompson,* 83 Cal. 420, 422; *Estate of Jessup,* 80 Cal. 626; *Bryant v. Thompson,* 128 N. Y. 426; *Waller v. Barrett,* 24 Beav. 413.)

THE COURT.—Appellant is the residuary legatee under the will of her late husband, Solomon Heydenfeldt, deceased.

On October 23, 1893, the final account of the respondents having been settled, a decree of distribution was entered,

which, after directing the executors to pay to certain persons named in the decree certain specified sums, directed them to pay the remainder of the money in their hands, amounting to the sum of $18,665.89, to appellant. This sum, excepting a few hundred dollars, was then on deposit in a savings bank to the credit of the estate.

The court found: "That pursuant to said decree said executors paid to said Elizabeth A. Heydenfeldt, the defendant herein, the said sum of $18,665.89; that thereafter it was determined by the supreme court, and this court finds the fact to be, that the sum of $10,370 of said amount so paid to said Elizabeth A. Heydenfeldt was not a part of the assets of said estate, but was the proceeds of an insurance upon the life of said Solomon Heydenfeldt, deceased, payable by its terms to Catharine, wife of said Solomon Heydenfeldt, or to any wife that may survive him, and minor children living at the time of his death; that the remainder of the money so paid to the defendant, to wit, the sum of $8,295.89, consisted entirely of assets of said estate."

The court further found that on March 15, 1895, said decree of distribution was reversed by this court (*Estate of Heydenfeldt*, 106 Cal. 434), and the matter of the distribution of said estate was remanded to the superior court for a further hearing; that no further hearing has been had, and no other order or decree of distribution made, and that repayment was demanded by the plaintiffs. The cause was tried and judgment rendered in favor of the plaintiffs for the sum of $8,295.89. This appeal is from an order denying defendant's motion for a new trial, based upon the ground that certain of the findings are not justified by the evidence.

The evidence on the part of the plaintiffs was, in substance, that after the payment of specific sums directed by the decree to be paid to other parties there remained said sum of $18,-665.89, to which appellant was entitled under the decree; that at that time she was indebted to her counsel, Messrs. Knight and Heggerty, in the sum of $5,000, and to Pierson & Mitchell, also her counsel, in the sum of $2,000; that she was also indebted to Julius Jacobs, one of the plaintiffs, in the sum of $3,781.51, and to Ashton & Gardiner, real estate agents, in the

sum of $7,052, the indebtedness to Jacobs being for money lent and advanced to her, and to Ashton & Gardiner for advancements and services connected with her real estate; the last two items being secured by a mortgage executed by appellant to Mr. Ashton.

On October 26th Mrs. Heydenfeldt and her attorneys, and the executors and their attorneys, met, and Mrs. Heydenfeldt directed the executors to pay to her said attorneys the said sums due to them, and to discharge her said debts due to Jacobs and to Ashton & Gardiner, respectively. As the bank was not at that time paying deposits, except upon the notice required by its rules, it was agreed between the parties and the bank that a bank-book should be issued to each of these creditors for the amount respectively due to each, and this was done, a book being issued to appellant for the remainder; and she thereupon executed and delivered to the executors her receipt acknowledging that she received from them "$18,665.89, the residue of the cash on hand in the hands of the executors as shown by their final account, and distributed to me [her] under the decree of distribution entered in the above-entitled action," and Ashton released the mortgage he held as security for her indebtedness to Ashton & Gardiner and to Jacobs.

The transaction as above stated was not controverted by defendant, except that testimony was given tending to show that there was no settlement of the amounts due to Jacobs, and to Ashton & Gardiner, on their personal accounts, but that the receipt was given to facilitate the closing of the estate. We think, however, that the evidence fully sustains the conclusion that there was a full settlement of these accounts, and that they were paid with the consent and by the direction of appellant in the manner above stated. If the bank had failed, the loss would undoubtedly have fallen upon those who had accepted bank-books and thus became depositors; nor could one be well led to believe that the mortgage securing these demands would have been canceled, if the transaction was not regarded by both parties as a full and unqualified settlement and payment.

The argument on behalf of appellant is, however, mainly upon a question of law. Appellant concedes the right of an

executor to maintain an action for property delivered over to a devisee or legatee pursuant to a decree of distribution, subsequently reversed; but it is contended that this right is strictly confined to property constituting assets of the estate "actually delivered" under the decree. If, as we have seen, the money was used with her consent and under her direction to discharge her personal debt and relieve her land from the encumbrance of a mortgage given to secure it, the law will not permit her to say that, as she did not actually receive the money in her hand, she did not receive it at all.

It is further contended, on behalf of the appellant, that "even if she had actually received the money, and then paid it over to respondents in settlement of her indebtedness to them, . . . . knowing, as they must be deemed to know, that the decree was subject to appeal and reversal, they, and not she, would be liable for restitution to the estate, as for so much money had and received, and would be chargeable accordingly in the probate proceedings, in the event of a reversal of the decree."

If this proposition is sound, it is difficult to perceive why $5,000 paid at the same time, and in the same manner, to her counsel who procured the decree of distribution and now represent her on this appeal, should not be refunded to the executors.

It is well settled that the judgment plaintiff, who enforces the judgment, is charged with the duty of making restitution to the defendant of whatever was received on the judgment, if the judgment be afterward reversed. This the appellant concedes; but her contention above stated is, in effect, that the executors against whom a decree of distribution is rendered, and who comply with the command of the court before the time limited for taking an appeal has expired, do so at their peril, for the reason that they must be deemed to have known that an appeal might be taken.

The case of *Langley v. Warner*, 3 N. Y. 327, is directly in point. In that case Walsh recovered a judgment against Langley in a prior action in which Warner, the defendant, was Walsh's attorney. Walsh agreed with his attorney, Warner, that he might retain the amount collected from Langley on execution, and credit it on an indebtedness due from Walsh to

Warner. The money was collected and the credit given. The judgment was afterward reversed, and Langley, the defendant in the first action, from whom the money had been collected, brought the action against Warner to recover the money received by him under the circumstances above stated. The court, by Bronson, C. J., said:

"It was the same thing, in effect, as though the defendant had first paid over the money to Walsh, and the latter had then repaid it to the defendant in satisfaction of his debt. About two months afterward the judgment was reversed, and restitution was awarded to the plaintiffs against Walsh. It was very proper that he should make restitution, for he had, in effect, received the money and applied it to the payment of his debt. The plaintiffs proceeded to execution against Walsh in pursuance of the judgment for restitution; but, failing in that, they now seek to recover the amount from the defendant. I see no principle on which the action can be maintained. The defendant has got none of the plaintiff's money; he has got nothing but his own. Walsh had a perfect title to the money when it was collected—just as perfect as it would have been if no *certiorari* had been issued. He had a right to do what he pleased with the money, and he made a very proper use of it by paying his debt. The plaintiffs have taken up the strange notion that because they were trying to get the judgment reversed Walsh could not give a good title to the money, especially if he paid it to one who knew what they were doing. I am not aware of any foundation for such a doctrine. As Walsh had a good title to the money, he could, of course, give a good title to the defendant, or anyone else. No one was bound to presume that the judgment of a court of competent jurisdiction was erroneous and would be reversed. The legal presumption was the other way—that the judgment was right, and would be affirmed. But if the judgment had been known to be erroneous the pendency of the proceedings in error could not affect, in the least degree, the title of Walsh to the money. Nothing short of a reversal of the judgment could destroy or impair his right."

In *Bank of United States v. Bank of Washington*, 6 Pet. 8, it was said: "It is a settled rule of law that upon an erroneous judgment, if there be a regular execution, the party may justify

under it until the judgment is reversed; for an erroneous judgment is the act of the court. . . . . A contrary doctrine would be extremely inconvenient, and in a great measure tie up proceedings under a judgment during the whole time within which a writ of error might be brought."

Appellant cites, upon the point now under consideration, *Reynolds v. Harris*, 14 Cal. 681, 682; 76 Am. Dec. 459; *Ex parte Morris*, 9 Wall. 605; *Mark v. Cowles*, 61 Ala. 299, 303; 2 Perry on Trusts, sec. 827. None of these authorities are inconsistent with *Langley v. Warner, supra,* or *Bank of United States v. Bank of Washington, supra,* though *Ex parte Morris, supra,* appears upon a casual reading to be so. The court said: "If Smith, the district attorney, received from McCrosky any part of the fund ordered to be paid to the latter, the rights of the petitioners followed the money into his hands, and he is liable for it."

The proceeding was against certain bales of cotton, the property of the petitioners, under which they were forfeited to the United States and sold, and the proceeds distributed five per cent to the district attorney, and other parts to other officers, and one-half the remainder to McCrosky, the informer. It was offered to be shown that Smith "had received a large part of the money paid to the informer," who was out of the state. Under the circumstances the word "received" implies a gift or voluntary deposit without consideration, and not the payment of a prior obligation. It would be very strange, if the court meant what appellant seems to think was meant by the language quoted, that no reference was made by the court to *Bank of United States v. Bank of Washington, supra,* which is wholly inconsistent with appellant's interpretation of *Ex parte Morris, supra.*

Finding no error in the record the order appealed from is affirmed.