[Civ. No. 2549. First Appellate District, Division One.—November 26, 1918.]

LAURA J. E. MILLS, Respondent, v. CHARLES D. LAING et al., Appellants.

JUDICIAL SALES—TITLE OF PURCHASER AT SALE UNDER EXECUTION—REVERSAL OF JUDGMENT—EFFECT.—The title of one not a party to a judgment which is erroneous but not void, who purchases at a sale under such judgment, is not defeated or impaired by a subsequent reversal of the judgment on appeal, but where a party to the decree purchases the property, he or his subsequent grantee acquires a defeasible title only, which falls with a subsequent reversal of the judgment.

ADVERSE POSSESSION—HOSTILE CLAIM ESSENTIAL.—The essence of adverse possession is that the holder claims the right to hold, not under, but in opposition to the title to which his possession is alleged to be adverse.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Arthur H. Barendt and Geo. H. Pippy, for Appellants.

F. H. Dam, for Respondent.

LENNON, P. J.—This is an action in ejectment to recover the property described in the complaint, which was acquired by one of the defendants from the plaintiff under a decree of sale in an action for specific performance, and was occupied by her for more than five years before this action was commenced.

The facts constituting the basis of the case are briefly as follows: In January, 1903, Laura J. E. Mills, the plaintiff, was the owner and holder of the property here involved. Thereafter Charles Wesley Reed entered into a contract for its purchase, but being unable to pay Mary A. Fritz the balance of certain money which he had borrowed from her, he assigned his contract of purchase and the cause of action based thereon to her as security therefor. Mrs. Fritz was subsequently substituted as plaintiff in that action in the place of Reed, and on

the twenty-ninth day of May obtained judgment against Mrs. Mills, providing in part for a sale of the property. On July 14, 1908, the clerk of the court, pursuant to the judgment, executed a deed in the name of Mrs. Mills, conveying the property to Mrs. Fritz. The next day the deed was recorded. Thereafter, and on the thirtieth day of September, 1908, Mrs. Fritz sold the property to Isabella Laing, the only defendant in interest here, under a contract by which payment was to be made in installments. Mrs. Laing went into possession of the premises on the third day of October, 1908, and with her husband occupied them continuously down to the date of trial, and was in possession at the time of the commencement of this action, December 4, 1915, having theretofore, to wit, in September, 1915, made the last payment under her contract of purchase. However, after the judicial sale of July, 1908, and after Mrs. Laing had gone into possession of the premises under her contract, to wit, on the first day of December, 1908, Mrs. Mills appealed from that judgment without filing any bond staying execution. December 3, 1909, the judgment was reversed. (*Fritz* v. *Mills,* 12 Cal. App. 113, [106 Pac. 725].) Upon a second trial of the action judgment went for Mrs. Mills, denied the plaintiff therein specific performance, and this judgment was, so far as we are here concerned, declared final in effect by the supreme court on June 21, 1915. (170 Cal. 449, [150 Pac. 375].) During this litigation Mrs. Mills paid no taxes on the property, they, by the terms of the contract of purchase between Mrs. Laing and Mrs. Fritz, being paid by the latter.

One of the questions in the case requiring consideration is, What effect did the reversal of the judgment in favor of Mrs. Fritz have upon the conveyance by her to Mrs. Laing?

It is settled law that the title of a stranger purchasing lands at a judicial sale under a judgment which is erroneous but not void will not be defeated or impaired by a subsequent reversal of the judgment. If a judgment is so far valid that it is necessary for the party against whom it is given to resort to an appeal to avoid its effect he must, in order to prevent execution, stay proceedings by giving a sufficient undertaking on appeal. If he omit to do this strangers to the suit may purchase at the sale, and in that event their title is valid whether the judgment is affirmed or reversed. It is said that this is so for the reason that public policy requires that all persons

'should have confidence in the title to be derived from such sale; otherwise, few would take the risk of purchasing, and the property would almost invariably be sold at a grossly inadequate price. Upon the reversal of the judgment after such sale to a stranger the defendant must seek redress from the plaintiff. (Freeman on Executions, 3d ed., secs. 345, 346; Code Civ. Proc., sec. 957.) But where a party to the decree purchases he acquires a defeasible title only, which fails upon a subsequent reversal of the judgment. (Id., sec. 347.) And we think, under the weight of authority, that the grantee of one who purchases under an erroneous decree in his own favor, necessarily receives the title subject to the condition under which it was held by his vendor. (Id., sec. 347; 2 Dembitz on Land Titles, sec. 164; *Reynolds* v. *Harris,* 14 Cal. 667, 681, [76 Am. Dec. 459]; *Di Nola* v. *Allison,* 143 Cal. 106, 112, [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976].)

In the case of *Marks* v. *Cowles,* 61 Ala. 299, the facts were identical in principle with those of this case. The purchasing plaintiff sold the land to a third person, a stranger to the action. After the conveyance the judgment under which the property was sold was reversed. The court held that the defendant was entitled to restitution of the land upon the ground that the purchaser from the plaintiff was chargeable with notice of the defeasible character of the title of his grantor, saying: "The judgment or decree must be shown necessarily as an indispensable element of the title of the party on the face of the title papers. And when it is shown, the defeasible character of the title appears, of which the vendee is bound to take notice. . . . The right of a party aggrieved by an erroneous judgment to a restoration to the condition in which he was when it was rendered—the prohibition against the use of such judgment by his adversary so as to derive advantages he cannot restore, would be of little avail if through the mechanism of an alienation to a party bound to know that the right of prohibition exists, it could be defeated."

The only other question in the case worthy of detailed consideration is as to whether or not it can be said under the facts of the case that Mrs. Laing acquired title to the property by prescription. It will be noted that she went into possession of the premises in the month of October, 1908, and remained therein for more than five years, to wit, about seven years, at the time this action was commenced. We will not attempt to

answer all of the points made by defendant on this phase of
the case.   We think it sufficient to say that the evidence in
this case sustains the view that Mrs. Laing did not establish
title by prescription in failing to show that she held the prop-
erty in hostility to the title of the true owner, and under a
claim of right.   If the possession is consistent with or in sub-
ordination to the title of the real owner, it is not adverse.
Any evidence of the recognition of the title of another is
always admissible to show the real character of the possession.
(*Unger* v. *Mooney,* 63 Cal. 593, [49 Am. Rep. 100] ; 1 Am.
& Eng. Ency. of Law, 796; 2 C. J. 131, secs. 224, 225.)   It is
said in *McCracken* v. *San Francisco,* 16 Cal. 636: "To render
possession adverse, so as to set the statute of limitations in
motion, it must be accompanied with a claim of title; and this
claim, when founded on a written instrument as being a con-
veyance of the premises, must be asserted by the occupant in
good faith, in the belief that he has good right to the premises,
and with the intention to hold them against all the world.
The claim must be absolute—not dependent upon contingen-
cies—and must be 'exclusive of any other right,' and to render
the adverse possession thus commenced effectual as a bar to a
recovery by the true owner, the possession must be continued
without interruption, under such claim, for five years."
   The essence of adverse possession is that the holder claims
the right to his possession not under but in opposition to the
title to which his possession is alleged to be adverse.   (*Farish*
v. *Coon,* 40 Cal. 33, 57.)
   As we have seen, Mrs. Laing was bound to know and, in
fact, did know, the condition of the record upon which the title
of Mrs. Fritz rested.   The contract of purchase provided in
part for a return of the money paid on account of the pur-
chase price in the event that Mrs. Fritz was unable to tender
Mrs. Laing a perfect title.   After the reversal of the judg-
ment in favor of Mrs. Fritz on the first appeal, and on April
30, 1910, Mrs. Laing evidently became apprehensive concern-
ing the condition of Mrs. Fritz's title, and as a result a second
contract was entered into between them, which provided,
among other things, as follows: "In case the seller is not able
to tender the purchaser a perfect title, . . . or if the pur-
chaser should be at any time ousted from the possession of
said premises, then in any of said events, at the option and
upon the demand of the purchaser, the seller shall return all

of the moneys which the purchaser shall have paid to the seller, less $45 a month rent for the said premises for the time they have been occupied by the purchaser, plus the interest hereinafter stated.'' The new agreement further provided: ''The seller further agrees . . . in all respects to save purchaser harmless in all matters relating to said title and to his occupation of said premises.'' Shortly after the decision of the supreme court on the second appeal, affirming the judgment of the trial court denying Mrs. Fritz a specific performance of the contract in her action against Mrs. Mills, and on September 4, 1915, Mrs. Laing wrote to Mrs. Fritz, calling attention to this decision, and, construing it, said: (It) ''means, as I understand it, that the property belongs to Laura J. E. Mills, and that you have not, and never have had, any title to convey to me.'' In November, 1915, Mrs. Laing again wrote to Mrs. Fritz, and, after quoting certain provisions of the contract of purchase, demanded the return of the money she had paid on account of the purchase, less a certain sum per month during the period she had occupied the premises, whereupon, she said, ''I will of course . . . immediately vacate the premises.'' Approximately a month after this action was commenced Mrs. Fritz and Mrs. Laing entered into a supplemental agreement, reaffirming certain provisions of the contract of April, 1910, and providing further that Mrs. Fritz would assume and pay all attorney's fees, costs, damages and expenses which might be incurred by or imposed upon Mrs. Laing by reason of the litigation over the property. Mrs. Laing in part testified:

''Q. You expected to get a deed when you had the property paid for, and did not expect to become the owner in any other way than through a deed from Mrs. Fritz, isn't that correct? A. Yes, sir.''

She also testified that her attorney in this case was employed by Mrs. Fritz.

In view of what has just been said, we are convinced that it cannot be held that Mrs. Laing held possession of the property in hostility to the title of Mrs. Mills. Mrs. Laing did not enter into possession of this property and hold it under a claim of title exclusive of any other right. It is true that the two contracts made by Mrs. Fritz and Mrs. Laing two and eight years after the contract of purchase might have been entered into under such circumstances as would warrant the conclusion

that they were contracts of indemnity only. But it must be remembered that Mrs. Laing was bound to know and did know the doubtful condition of the title when she entered into the contract of purchase. In her letter of November, 1915, she quoted certain provisions of that contract, according to which, under the decision of the supreme court, she seemed to believe that she ought to vacate the premises, and that upon doing so she was entitled to the return of the payments made by her, less a certain monthly sum covering the period of her occupation, to be considered as rental of the premises. Much of what was done by Mrs. Laing was done to protect the interests of Mrs. Fritz. All through the transaction Mrs. Laing appears to base her claim to the property upon the title of Mrs. Fritz, and to hold the possession thereof in submission to the title of Mrs. Mills.

The judgment is affirmed.

Sturtevant, J., *pro tem.*, and Beasly, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 23, 1919.

All the Justices concurred.