Ralph D. ABERNATHY et al., Appellants,

v.

John PATTERSON, Individually and as Governor of Alabama, et al., Appellees.

No. 19023.

United States Court of Appeals Fifth Circuit.

Oct. 31, 1961.

Charles S. Conley, Montgomery, Ala., Eugene Cotton, Richard F. Watt, Cotton, Fruchtman & Watt, Chicago, Ill., for appellants.

M. Roland Nachman, Jr., Robert P. Bradley, Sam Rice Baker, Montgomery, Ala., Steiner, Crum & Baker, Montgomery, Ala., of counsel, for appellees.

Before RIVES and WISDOM, Circuit Judges, and CARSWELL, District Judge.

RIVES, Circuit Judge.

The complaint filed by four Negro ministers describes this action as "a suit of

a civil nature to redress the deprivation under color of state law, statutes, ordinances, regulations, custom or usage, of rights, privileges and immunities secured by the Constitution of the United States and by Acts of Congress providing for equal rights of citizens and all persons within the jurisdiction of the United States." It states that the action is brought under the Constitution of the United States, Article IV, Section 2, and the 13th, 14th and 15th Amendments to the Constitution, and under 28 U.S.C.A. §§ 1331(a) and 1343(3) and (4), and under 42 U.S.C.A. §§ 1983 and 1985(3). The defendants, sued individually and as officers, are the Governor of Alabama, the Mayor of Montgomery, the Commissioner of Police of Montgomery, the Commissioner of Public Affairs of Montgomery, and the Sheriffs of four Alabama counties—Montgomery County, Mobile County, Jefferson County and Marengo County.

The complaint alleges that each of the plaintiffs, individually and through his association with various named organizations and in association with other persons, "under the spiritual leadership of the Reverend Martin Luther King, Jr., has for some time sought to advance the equality of treatment of members of the Negro race through Christian and non-violent constitutional means. Accordingly, the purpose of the plaintiffs, individually, and the associations they have been identified with as leaders, has been to achieve for themselves individually and for the Negro citizens of this State and the country the full enjoyment of the privileges and immunities guaranteed to all citizens under the provisions of the Constitution of the United States." The complaint then charges that, "in or about February 1960, several of the defendants and divers others co-conspirators, the names of whom are to the plaintiffs presently unknown, entered into a conspiracy, individually and under the authority of their offices, to prevent the plaintiffs and others from accomplishing their objectives as aforesaid and to deprive the plaintiffs and others of the equal protection of the laws and of their equal privileges and immunities under the laws and from exercising their rights and privileges as citizens of the United States, and to deprive them of their rights, privileges and immunities secured by the Constitution and laws of the United States and entered into a conspiracy to deprive the plaintiffs of their rights to access to a free press, free speech and peaceful assembly as well as the right to petition for redress of grievances guaranteed to them under the 1st Amendment of the Constitution, as incorporated in the 14th Amendment thereto."

Proceeding, the complaint details a number of instances in which it is alleged that Negro students and Negro citizens of Montgomery have been denied rights guaranteed to them by the Constitution and laws of the United States. It then alleges that on or about March 29, 1960, "supporters of the plaintiffs and the movement for equality which they lead" inserted in the New York Times a paid advertisement purporting to be signed by eighty persons, many of them prominent Americans from various walks of life. A copy of the advertisement is attached as an Exhibit to the complaint. It is captioned "Heed Their Rising Voices," and urges contributions to a "Committee to Defend Martin Luther King and The Struggle for Freedom in the South." A part of the advertisement makes specific reference to Montgomery, Alabama, as follows:

"In Montgomery, Alabama, after students sang 'My Country, 'Tis of Thee' on the State Capitol steps, their leaders were expelled from school, and truckloads of police armed with shotguns and teargas ringed the Alabama State College Campus. When the entire student body protested to state authorities by refusing to re-register, their dining hall was padlocked in an attempt to starve them into submission."

Following the names of those sponsoring the advertisement is a line reading: "We in the south who are struggling

daily for dignity and freedom warmly endorse this appeal," which in turn purports to be signed by twenty ministers including the four plaintiffs. The complaint then alleges:

"The defendants herein at some time thereafter conspired and planned under the color of law and utilizing their official positions, as well as the judicial machinery of the State, to deter and prohibit the plaintiffs and their supporters as set forth above, from utilizing their constitutional rights and in particular their right to access to a free press, by instituting fraudulent actions in libel against the plaintiffs, without any basis in law or fact, in the Alabama State courts, arising out of the aforesaid advertisement. Said libel actions were also against the New York Times."

According to the complaint, separate libel suits were instituted by Governor Patterson, Mayor James, and Commissioners Sullivan and Parks. Mayor James' and Commissioner Sullivan's actions have proceeded to judgment in the Circuit Court of Montgomery County, Alabama, damages in the amount of $500,000 having been awarded to each of them against the four Negro ministers and The New York Times. It is alleged that to stay execution pending appeals in the two cases, the plaintiffs are required under Alabama law to post supersedeas bonds in the aggregate amount of $2,000,-000, which they are financially unable to do. Plaintiffs are, in addition, "subjected

to preparation for further trials in the Parks and Patterson cases, which are still pending  *  *  *." 1

Irreparable damage is alleged as follows:

"Accordingly, plaintiffs are subjected to immediate and irreparable injury and loss:

"(a) They are subjected to the immediate loss and damage as a result of levies and attachments of all of their property, both real and personal, which they own, individually as well as jointly, and

"(b) Unless this Honorable Court gives relief, the plaintiffs herein and the Negro citizens of the State of Alabama will be deterred from using the media of a free press and all other rights guaranteed under the 1st Amendment, as incorporated in the 14th Amendment, to present the injustices to which they have been submitted."

The averment as to lack of an adequate remedy at law is:

"The plaintiffs have no plain, adequate and complete remedy at law which can protect the plaintiff's rights of freedom of expression, of press and assembly, and unless this Court gives relief, plaintiffs will be further relegated to a segregated Court system. The plaintiffs have not and cannot, under the present segregated organization of the Alabama State Courts, receive a fair and impartial trial.[2]   Therefore,

---

1. In their briefs both the appellants and the appellees go beyond the record. We are informed that since the dismissal of this action, the judgment in the Sullivan case has been appealed to the Supreme Court of Alabama; the James case is pending in the State trial court on a motion for new trial; and the Parks and Patterson cases have been removed to the United States District Court for the Middle District of Alabama; that that court has denied motion to remand (Parks v. New York Times Co., 195 F. Supp. 919), holding that Parks and Patterson had fraudulently joined as defendants the four resident Negro ministers

who are plaintiffs in this action; and that this Court has allowed appeals from those interlocutory orders under 28 U.S.C.A. § 1292(b).

2. The facts alleged in the complaint and its exhibits to sustain this conclusion are confined to the State trial court. It is charged that the Sullivan and Jones cases were tried in a courtroom in which segregation of Negro and white citizens was enforced pursuant to order of the presiding judge and over the objections of counsel for the plaintiffs herein, who were unable to obtain a fair and impartial trial because of the highly prejudicial atmosphere in the community.

recourse to such a system would be no remedy at all consistent with the guarantees of the Constitution."

The relief prayed for is as follows:

"Wherefore, plaintiffs respectfully pray:

"1. That this Learned Court enter a permanent injunction:

"(a) Enjoining defendants, their agents, servants, employees and attorneys, from levying upon plaintiffs' property both real and personal, which has already been attached, as well as all future levies.

"(b) Enjoining defendant from proceeding with trials presently pending and which are instituted by the defendants, John Patterson and Frank Parks.

"(c) Restraining each of the defendants named herein, their agents, employees or attorneys, from engaging in the aforesaid conspiracy designed to deter and prohibit the plaintiffs from exercising rights guaranteed by the 1st and 14th Amendments with respect to freedom of speech, press, assembly, the right to petition for redress of grievances, and the right to free worship.

"2. That this Learned Court make, declare and enter a declaratory judgment, declaring the judgments awarded to the defendants Sullivan and James to be null and void.

"3. That this Learned Court, in the meantime, enter an Order Pendente Lite, enjoining the defendants herein, their agents, servants, employees and attorneys:—

"(a) From proceeding with all sales of automobiles and other personal property which has been attached and is about to be sold pursuant to present levys, including garnishments, and from proceeding to the selling of or the otherwise encumbering of or disposing of property of the plaintiffs in satisfaction of judgments entered in cases No. 27416 and 27417, which are pending before the Circuit Court of Montgomery County, Alabama, pending disposition of this action; and

"(b) From proceeding in any manner whatsoever with the libel actions in the Circuit Court of Montgomery County, Alabama, entitled 'Frank Parks v. New York Times Company, a corporation, et al.' and 'John Patterson v. New York Times Company, a corporation, et al.'"

Concurrently with the filing of the complaint, the plaintiffs moved for a preliminary injunction to prevent the levy upon and sale of their property in satisfaction of the two $500,000 judgments. On the same date, the district court denied the motion for preliminary injunction, stating:

"It appearing to the Court that the plaintiffs have wholly failed to seek any relief from the Circuit Court of Montgomery County or from any of the named defendants, it is the opinion of this Court that said request for a preliminary injunction is not well taken.

"It further appears that the plaintiffs herein have had sufficient notice of the judicial sale of plaintiffs' real and personal property and have wholly failed to make a prayer for relief in the Courts of the State, with the ultimate right to request relief in the Supreme Court of the United States. It is the further opinion of the Court that this request for relief, being filed herein within twenty-four hours of the date of the alleged public sale, comes too late. It is the opinion of the Court, therefore, that plaintiffs' request for relief should be denied."

Some ten days later the plaintiffs renewed their motion for a preliminary injunction, and the district court again denied that motion.

Thereafter, the defendants filed motions to dismiss the action. Those motions to dismiss were sustained by the district court without a formal opinion, but with the following statements:

"While this Court is not without the authority to grant the relief prayed for if the circumstances are found to so justify it, the Court is of the opinion that although vested with the authority to redress the deprivations of rights guaranteed to all citizens under the Constitution and laws of the United States, the circumstances of this case do not require or justify this court's intervention. * * *

* * * * * *

"As this Court has repeatedly held, the State Courts, as well as the federal judiciary, are under a sworn duty to uphold the Constitution of the United States and the citizens' rights thereunder, and this Court will not presume that the Courts of the State will not uphold this sworn obligation. Browder v. City of Montgomery, [D.C.] 1956, 146 F.Supp. 127; N.A. A.C.P. v. Gallion, et al., [D.C.] 1960, [190] F.Supp. [583]; Cherry Investment Co. v. Emergency Aid Insurance Co., 1961, M.D.Ala., Civil Action No. 707–S."

■■ This appeal is from the judgment dismissing the complaint. The test by which we review such a dismissal is indeed strict:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 1957, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 2 L.Ed.2d 80. This Court has held that test applicable to a complaint drawn under 42 U.S.C.A. § 1983. Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, 127, 55 A.L.R.2d 505. In the present case, however, that test must be applied in the light of the facts that the only relief possibly appropriate, and the only relief for which the plaintiffs pray is the equitable remedy of injunction; and, before dismissing the complaint, the district court had twice denied the plaintiffs' motion for preliminary injunction.

■ Upon this appeal, we consider first whether, under the ordinary principles of equity, the plaintiffs have shown irreparable damage and the absence of a plain, adequate and complete remedy at law.[3] Unless and until the plaintiffs have stated a claim entitling them to injunctive relief on the basis of regular equitable principles, it is both unnecessary and inappropriate for us to decide such delicate and important questions of federalism as might then be presented by the application of the anti-injunction statute, 28 U.S.C.A. § 2283, and its related judicial rule of comity.

As has been noted (on page 454), the plaintiffs' claim of irreparable injury and loss is based (1) upon the claim that "the plaintiffs and the Negro citizens of the State of Alabama will be deterred from using the media of a free press and all other rights guaranteed under the 1st Amendment, as incorporated in the 14th Amendment, to prevent the injustices to which they have been submitted"; and (2) upon the claim that the plaintiffs "are subjected to the immediate loss and damage as a result of levies and attachments of all of their property, both real and personal, which they own individually as well as jointly."

■ As to (1), the plaintiffs' claim must be confined to themselves to the exclusion of other Negro citizens for, as was conceded upon the oral argument, this is not a class action. Libelous utterances or publications are not within the area of constitutionally protected speech and press.[4] The plaintiffs' claim that

3. See Terrace v. Thompson, 1923, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; I Moore's Federal Practice, pp. 2639, 2640.

4. Near v. State of Minnesota, 1931, 283 U.S. 697, 715, 51 S.Ct. 625, 75 L.Ed. 1357; Chaplinsky v. State of New Hampshire, 1942, 315 U.S. 568, 571, 572, 62 S.Ct. 766, 86 L.Ed. 1031; Beauharnais v. People of State of Illinois, 1952, 343 U.S. 250, 256, 72 S.Ct. 725, 96 L.Ed. 919; Roth v. United States,

they will be deterred from using the media of a free press must therefore be predicated upon their claims of denial of a fair and impartial trial of the libel actions and the absence of a plain, adequate and complete remedy at law.

As to (2) the claim that plaintiffs are subjected to the immediate loss of their property as a result of levies and attachments, that claim can best be considered in connection with the plaintiffs' further claim that they have no plain, adequate and complete remedy at law. As has been noted (on page 454), the latter claim is predicated upon the conclusion that, "The plaintiffs have not and cannot, under the present segregated organization of the Alabama State Courts, receive a fair and impartial trial." Of course that sweeping conclusion cannot be accepted unless it is well supported by specific factual averments. As has been further noted (ante footnote 2), the supporting allegations of fact are confined to the State trial court. We pass by the fact that the only thing now pending in the State trial court is a motion for new trial in the James case (see footnote 1, supra). We pretermit also consideration of whether extraordinary remedies are available to the plaintiffs under the laws of Alabama. For we are of the opinion that the ordinary methods of review by the Supreme Court of Alabama and, ultimately, by the Supreme Court of the United States provide the plaintiffs with a plain, adequate and complete remedy at law.

Under the laws of Alabama, when a litigant considers that a judgment is contrary to the law or the evidence, or that the damages awarded are excessive, he may, without furnishing any supersedeas bond, file a motion for new trial within thirty days from the entry of judgment. Alabama Code of 1940, Title 7, Section 276. If the trial court refuses to grant a new trial, an appeal lies to the Supreme Court of Alabama. Alabama Code of 1940, Title 7, Sections 764, 811. True, in Alabama an appeal from a judgment for the payment of money does not operate as a supersedeas, or to stay or suspend execution of the judgment, unless the appellant gives bond with sufficient sureties in double the amount of the judgment. Alabama Code of 1940, Title 7, Section 793. Under the averments of the complaint, the required supersedeas bond in each of the two cases which have proceeded to judgment is $1,000,000, or an aggregate of $2,000,000. We may well accept the plaintiffs' averment that they are unable financially to post supersedeas bonds in the amount of $2,000,000. If, however, the judgments are reversed on appeal, the plaintiffs herein will be entitled to restitution of any money paid or property taken.[5]

Finally, if the plaintiffs herein should not be satisfied that their constitutional rights are adequately recognized and pro-

---

1957, 354 U.S. 476, 483, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Konigsberg v. State Bar of California, 1961, 366 U.S. 36, 50, 81 S.Ct. 997, 6 L.Ed.2d 105.

5. "It must be regarded as the settled law of this state that a party who pays money, or is dispossessed of property by process on a judgment or decree afterwards reversed on appeal is in general entitled as of right to restitution of the money paid or the property taken, so as to be placed in statu quo with respect to his rights and advantages previous to the erroneous judgment. Marks v. Cowles, 61 Ala. 299; Ex parte Walter Bros., 89 Ala. 237, 7 South. 400, 18 Am. St.Rep. 103; Florence C. & I. Co. v. Louisville Banking Co., 138 Ala. 588, 36 South. 456, 100 Am.St.Rep. 50; Lehman-Durr Co. v. Folmar, 166 Ala. 325, 51 South. 954.

"The right may be enforced by the incorporation of an appropriate order in the judgment or decree of reversal (Marks v. Cowles, supra; Lehman-Durr Co. v. Folmar, supra); or summarily by motion in the trial court (Ex parte Walter Bros., supra; Cowdery v. London, etc., Bank, 96 Am.St.Rep. 142, note); or by a supplemental bill of review, if in equity (McCall v. McCurdy, 69 Ala. 71); or by a distinct, independent action (Haebler v. Myers, 132 N.Y. 363, 30 N.E. 963, 15 L.R.A. 588, 28 Am.St.Rep. 589; Cowdery v. London, etc., Bank, supra, 96 Am.St.Rep., note p. 143)." Carroll v. Draughon, 1911, 173 Ala. 338, 56 So. 209, 210.

tected by the Supreme Court of Alabama, they may then seek review in the Supreme Court of the United States.

We conclude that the plaintiffs will suffer no such irreparable damage as would justify injunctive relief, and that they have a plain, adequate and complete remedy at law. The judgment is therefore

Affirmed.