# Arnold, Adm'r *v.* Arnold, Adm'r.

## Settlement by Administrator.

1. Assignments of error not noticed by counsel in argument may be considered as waived.

2. *Letters of administration; extinguishes debt of administrator to intestate.*—Where an administrator owed notes to his intestate at the date of his death, the debt was extinguished when he was granted letters of administration. It became money in his hands without reference to his solvency or insolvency, which it was his duty to account for, and with which he was chargeable.

3. *Presumption of payment; when it does and does not arise.*—The doctrine of presumption of payment in cases where a note is found in possession of the maker free from circumstances calculated to excite suspicion, has no application when the debtor is the administrator of his creditor's estate.

4. *Burden of proof; when on administrator.*—If notes are found in the hands of an administrator which were executed by him to his intestate, the burden of proof is on him that the notes were not binding, subsisting obligations upon him at the time of the death of his intestate, and were therefore never assets in his hands—the presumption being that they were assets of the estate and that he had the amount of money in his hands sufficient to pay them.

[Arnold, Adm'r v. Arnold, Adm'r.]

APPEAL from Jackson Probate Court.
Tried before Hon. WM. B. BRIDGES.
The facts are stated in the opinion.

J. E. BROWN and MARTIN & BOULDIN, for appellant,
cited, *Potts v. Coleman,* 86 Ala. 94; *Same Case,* 67 Ala.
221; *Lipscomb v. Lelemos,* 68 Ala. 592; 86 Ala. 94; 67
Ala. 221; 68 Ala. 592.

TALLY & PROCTOR, *contra.*—On settlement of his ac-
counts administrator is chargeable with a debt due
from himself to the decedent.—*Purdom v. Tipton,* 9
Ala. 914; *Miller v. Irby's Admr.,* 63 Ala. 477; 1. Buck.
967; 3 Buck. 396.

TYSON, J.—On the 6th day of May, 1896, appellant
was appointed administrator of the estate of his father,
J. J. Arnold, Sr., who died on the 2nd day of April just
preceding. On July 17, 1896, an order was entered re-
moving him as administrator and revoking the letters
granted to him on account of his failure to give a new
bond in compliance with the former order of the court.

On the 6th day of February, 1897, the probate court
appointed H. C. Arnold administrator *de bonis non.*

On July 17th, 1897, the appellant filed his accounts
for final settlement of his administration and the 27th
of August following was fixed as the day for the hear-
ing of the same. This matter of settlement was con-
tinued from time to time until June 1, 1898.

On the 11th day of November, 1897, the administra-
tor *de bonis non* filed a written motion to charge the ap-
pellant with the sum of $3,000 due by him to the inte-
state in his lifetime as purchase money for a tract of
land, evidenced by three promissory notes in the sum
of one thousand dollars each, executed by him to his in-
testate, dated August 24, 1892, due respectively in
twelve, twenty-four and thirty-six months after date.

The probate court in making up the account against
the appellant charged him with these notes and refused
to allow him to set-off certain items of indebtedness
which he claimed against his intestate and also certain
payments alleged to have been made by him. The action

of the court in this respect is the only matter insisted upon in the brief of appellants' counsel, although there are quite a number of assignments of error based upon the rulings of the court in the admission and exclusion of testimony. We shall therefore consider only those matters insisted upon in argument and treat all other assignments of error as waived.

First, was there error in charging the appellant with three thousand dollars? It is not controverted by appellants' counsel, and indeed it cannot be, that if he owed the notes to the intestate at the date of his death, when he was granted letters of administration the debt was extinguished. "Incapable of suing himself; divesting the contract of parties, an essential element to its origin and continuance; converting the debt, for all practical purposes, from a *chose* in action, into a *chose* in possession; by operation of law, the equivalent of a judgment and execution against himself, satisfaction of which it is his duty, legal and moral, to make; voluntarily taking upon himself the right and duty to demand and receive, and the existing obligation of paying and discharging resting upon him; it is the just, natural, logical, legal consequence of his voluntary act, that the debt, he is in his fiduciary capacity bound to demand and receive, and which he is under legal and moral obligation to pay and discharge, should be presumed conclusively paid and discharged." It became money in his hands, without reference to his solvency or insolvency which it was his duty to account for and with which he was chargeable.—*Miller v. Irby's Adm'r.*, 63 Ala. 482, and authorities cited.

The contention however is that as there is no evidence in the record to show that the notes were in the posession of the intestate after maturity or that they went into the possession of the appellant after his intestate's death as assets of the estate and as the evidence shows they were produced by the appellant upon demand by appellee and introduced in evidence after being taken from his possession against his objection, for the purpose of charging him with the money, the court committed an error in allowing the notes to be

[Arnold, Adm'r v. Arnold, Adm'r.]

introduced. The theory of this contention is based upon the doctrine of presumption of payment recognized and enforced by the courts in cases where a note is found in the possession of the maker, free from circumstances calculated to excite suspicion.—*Lipscomb v. Delemus,* 68 Ala. 592; *Potts v. Coleman,* 86 Ala. 94; same case, 67 Ala. 221. This doctrine has no application when the debtor is the administrator of his creditor's estate. It is made the duty of an administrator immediately after taking out letters, to collect and take into his possession the goods and chattels, money, books, papers and evidences of debt of the decedent, except the personal property specifically exempted from administration, and to make a full inventory of the same.—Code, § 115. The administrator by the very terms of the statute is entitled to the possession of the note, notwithstanding it evidences a debt due and owing by him to his intestate. If his possession raised the presumption of payment by him to his intestate, it is clear, the heir or any other person having the right of an accounting with him, would be at a very serious disadvantage. Such a doctrine would require the heir in all cases to offer evidence that the note or obligation of the administrator to his intestate went into his hands as an asset of the estate, and that it was a subsisting liability against him at the date of the death of the intestate, in order to overcome the *prima facie* case made by evidence of mere possession by the administrator of the obligation, notwithstanding such possession was acquired by virtue of his appointment as administrator. We cannot lend our sanction to such a rule, the effect of which would be to offer a premium to debtors to administer upon the estate of their creditors in order to absolve themselves from the payment of an honest and just liability, to say nothing of the frauds that could be committed under it.

We are clearly of the opinion that the burden of proof was upon the administrator to establish that the notes were not binding, subsisting obligations upon him at the date of his father's death, and therefore were never assets in his hands. This he could do by showing that he had paid them to his father or by making proof of

some other fact which absolved his liability upon them during the life-time of his father. The production of the notes, though they came from his possession, and their introduction in evidence, raised the presumption, not only that they were assets of the estate, but that he had that amount of money in his hands for which he was accountable. In stating the account there was no error in charging the appellant with the amount of the notes, unless he sustained the burden of showing their payment to his intestate.

Upon this point the evidence is in conflict. That upon which the appellant relies in the main to sustain his contention as to payment and their surrender to him is the testimony of his wife. She did unqualifiedly testify to the possession of the notes by the defendant in December, 1894, nearly a year before the maturity of one of them. Her testimony shows her husband to be a small farmer, owning no property of which she was aware, except the three mules with which he made his crops. She did not know of his having any money with which to pay the notes. In rebuttal of this, was testimony of an admission made by him that the notes had not been paid. Besides, the only means out of which he could have paid these notes, as shown by the testimony of the witnesses introduced by him to establish a payment or a set-off to this debt, arose out of the business of two firms, Arnold & Anderson and Arnold, Anderson & Stuart, of which he was a member. It is very clear from the testimony that neither of these firms for him ever paid to his intestate prior to December, 1894, a sufficient sum to liquidate his liability upon those notes.

Outside of the note for $1,368.89 of Croker, Arnold & Gamble, a firm of which his intestate was a member, dated August 3, 1892, which the court allowed as a set-off, the only other sums shown to have been paid to the intestate was $625 by the firm of Arnold, Anderson & Stuart, on account of cedar and lumber. It is true the record contains the statement of an itemized account amounting to $1,616.74, which the appellant claims is due him, but there is no proof of its correctness. An

examination of the dates of the items on this account show that only about $725 was claimed to have been paid prior to December, 1894. Besides, if it had been true that the notes were paid in December, 1894, in the manner claimed, it is highly probable and certainly in keeping with common business methods that J. J. Arnold, Sr., would have required the note for $1,368.89 to have been surrendered to him and taken an acquittance in writing for all other items of indebtedness claimed of him before surrendering the notes.

Leaving out of considreation the itemized account, which was not proven, we find the facts, so far as payments or set-offs claimed, to be these. During the years 1893 and 1894, the firms of Arnold & Anderson, and Arnold, Anderson & Stuart, cut certain timber off the lands sold by J. J. Arnold, Sr., to the appellant, and prepared it for market at a mill owned by Arnold, Sr., and one Gamble. Just how much timber was cut by the intestate off these lands and its value, we are not informed. The evidence does disclose, however, approximately the quantity of timber cut by the two firms. However, the only two witnesses competent to testify to transactions with the intestate and who had any accurate knowledge of the quantity of the timber, its value and the disposition of the proceeds arising from the sale of it, were Stuart and Anderson. Stuart says that the square cedar was sold for $718 to Eagle Pencil Co. and Arnold, Sr., got one half the money which was paid as stumpage. And yet he says, the draft for this sum was deposited in the Bank of Winchester, Tenn., to the credit of Arnold & Anderson. How Arnold, Sr., got half the money out of the bank or when is not shown by the testimony.

Anderson, a member of the firms of Arnold & Anderson, and of Arnold, Anderson & Stuart, testified, that the firm was indebted to J. J. Arnold, Sr., during the years 1893 and 1894, but could not state amount or dates of such indebtedness. That the indebtedness was for services rendered by him for the firm and stumpage. He states that the contract for services was this, "he (J. J. Arnold, Sr.,) would work for us and he would pay himself. Being a father, we were perfectly willing

to let him transact any of our business. We used the mill by his instruction." It appears from the other evidence that Arnold, Sr., assisted in the management of the business of the firm, sold lumber for it, etc., and that the firm was to pay rent for the mill. Manifestly the intention of the parties was that J. J. Arnold, Sr., was to apply any money of the firm received by him in payment of his services. What the value of his service was, is not shown, and while the rent of a saw mill is shown to be worth 60 or 70 cents per thousand for sawing lumber, we are not informed by the evidence with any degree of accuracy how many thousand feet of lumber were sawn at this mill by these firms. This witness further states that he does not know how the accounts between the firms and J. J. Arnold, Sr., stood. He did say, however, that the firm of Arnold, Anderson & Stuart got about $1,250 worth of cedar off the land, "of which we gave J. J. Arnold, Sr., one half for stumpage," and on cross-examination, speaking of this payment, he said: "We paid him the first stumpage, part in money and a part in draft on the Eagle Pencil Co. The balance was all in checks on the Bank of Winchester, but some of them were made payable to different persons for J. J. Arnold, Sr.

Without commenting upon the conflict in the testimony of these two witnesses as to what amount was paid and how paid to Arnold, Sr., it is not satisfactorily shown that Arnold, Sr., did not have the right to apply and did apply all or a portion of the monies received by him to the payment of his services and the rent of the mill. If so applied, certainly the appellant is not entitled to have it credited upon his indebtedness. If only a portion was so applied, we are not informed and have no means of ascertaining, the balance that should be credited as a payment or allowed as a set-off.

The evidence is too indefinite and not sufficiently clear to support the onus upon appellant of establishing reasonably that he is entitled to have any certain sum allowed either as a payment or set-off.

The decree must be affirmed.