195 So. 739

**BRITTAIN et al. v. COMMERCIAL NAT. BANK OF ANNISTON.**

**7 Div. 569.**

Supreme Court of Alabama.

March 28, 1940.

Rehearing Denied May 9, 1940.

Rutherford Lapsley, of Anniston, for appellants.

Merrill & Merrill, of Anniston, for appellee.

FOSTER, Justice.

This is a second appeal in this case. On the first appeal an opinion was written by Justice Bouldin, and concurred in by the Court. Later a motion for a rehearing was made. Appellee consented that the motion be granted, and that the opinion and judgment affirming the decree be set aside, and that a judgment be here rendered reversing and remanding the cause. The opinion on that account was withdrawn. See 236 Ala. 692, 181 So. 914.

Upon remand, appellee, who had filed a cross-bill seeking a foreclosure of the mortgage, amended it so as to seek also a reformation in the description of one lot in it. The mortgage described the property as lots 1, 2 and 23. The cross-bill alleged that in including lot No. 2, there was a mistake, and it should have been lot No. 24: that the mistake was either mutual of both parties to the mortgage, or, in the alternative, that it was by his mistake of which the other knew or suspected and remained silent, and did not inform him of such mistake, and thus proceeded to a consummation of the transaction.

On the former appeal the issue had been whether the mortgage had been paid. The

trial court held that it had not been paid, and complainants who had sought a cancellation and redemption brought it here by appeal. On that hearing the opinion of the Court, which was adopted and pronounced, is as follows:

"Without dispute the mortgagors, pursuant to stipulation in the mortgage, carried fire insurance on the residence located on the mortgaged premises, with loss payable clause to the mortgagee. The residence was burned. The insurance, which somewhat exceeded the principal of the mortgage debt, was paid to the mortgagee, who deposited same in bank to his credit.

"The cross-bill, however, alleges that by agreement at the time the money was received it was not applied to the payment of the mortgage debt, but held for the use of the mortgagors in rebuilding the residence, and was applied to such purpose, some small portions being furnished to procure living quarters and other necessities growing out of the loss of the home, household effects, wearing apparel, etc.

"The evidence quite fully and clearly supports the decree of the trial court sustaining the cross-bill.

"The note and mortgage were not cancelled nor surrendered, but remained among the papers of the mortgagee evidencing investments coming to the hands of his executor. This is evidence the debt was unpaid tending to overcome the evidence afforded by receipt of the insurance money. Arnold v. Arnold, 124 Ala. 550, 27 So. 465, 82 Am.St.Rep. 199; Tisdale v. Maxwell, 58 Ala. 40; 48 C.J. 687. An account was opened by the mortgagee upon his ledger bearing a date contemporaneous with the receipt of the insurance money charging himself with, and crediting to the mortgagor, the full amount. This ledger account discloses dates and amounts charged against this fund aggregating the full amount thereof, all corroborated by original checks in evidence drawn to the mortgagor, or on his order to materialmen as disclosed by other evidence, for the purposes alleged in the cross-bill. The last check was for the exact balance of the fund. The ledger account kept by deceased in regular course of business was admissible evidence. Sharp v. Blanton, 194 Ala. 460, 69 So. 889; Tucker v. Tucker, 222 Ala. 595, 133 So. 714; Jones on Evidence, sections 319, 320.

"The theory of appellants that the mortgage debt was in fact paid, and the documents later held by the mortgagee as security for a new debt, for monies advanced on the personal credit of the mortgagor, is not sustained by the weight of the evidence.

"Aside from the contemporaneous account above noted, within a week after the insurance money was collected the mortgagors took out another insurance policy with like mortgagee clause covering the house in course of construction. Like insurance policies were taken out in later years. The mortgagee established credit with materialmen to procure materials for the new house, and interested himself while it was going up.

"While there is evidence that Mrs. Brittain, a joint mortgagor, and it seems a joint owner, preferred at first not to rebuild, so that they could have the lots clear, it sufficiently appears she left the business in the hands of her husband, knew the house was going up, and occupied it without questioning the continuance of the mortgage security so far as the mortgagee was advised.

"The evidence was taken orally before the trial judge. The usual presumption must be indulged in favor of his finding of fact.

"Affirmed.

"ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur."

The issue was again presented and tried after remand, along with additional prayer for a reformation. The trial court again held that the mortgage had not been paid and should be reformed as sought in the cross-bill. Relief was therefore denied complainants and granted to cross-complainants reforming the mortgage, and ordering its foreclosure. Complainants appeal.

On the question of whether the mortgage had been paid, there was but little additional evidence, and it did not lessen the value of the facts on which that issue had been previously tried. We have again reviewed it all, and adopt the opinion of Justice Bouldin on that issue on this appeal.

We now reach the question of reformation. Lot No. 24 was that on which the dwelling was situated, and there was no dwelling on lots 1, 2 or 23. Complainant did not own lot 2, but did own lots 1, 24 and 23. The insurance policy on the dwell-

ing contained a mortgagee clause as to it, with Dr. Anderson mortgagee, and payable to him as such. It was also shown on this trial that $400 of the insurance was on furniture with no mortgage clause. But all the insurance money of $1400.00 was paid by one check to complainants and Dr. Anderson. They all indorsed it and the money paid to Dr. Anderson, who used it in rebuilding the house on lot 24. New insurance was then taken by complainants' on the new house with mortgagee clause payable to Dr. Anderson. When the mortgage was taken by Dr. Anderson he advanced $670 to W. D. Staples to pay off a mortgage he held on lot 24.

Appellants claim that the balance or a part of it was to be used in a purchase of lot No. 2, of which Dr. Anderson seemed to have no notice. But no such purchase was made and appellants never acquired ownership of it. Dr. Anderson wrote the mortgage himself, and inserted lot 2 instead of lot 24. That was in 1927. There is no evidence that at that time he had information of the error. But shortly afterwards he came in possession of the Staples mortgage and deeds showing that they did own lot 24. But there is not shown to have been any circumstance to direct his attention to the fact that it was different from the description in his mortgage. Dr. Anderson had died prior to the institution of this suit, and his evidence had not been given.

Lots 23 and 24 were adjoining. Lot No. 1 was immediately to the rear of No. 24, and the three were used together. No. 2 was to the rear of No. 23, and owned by another. When Dr. Anderson advanced the money on the mortgage it originated in an effort to refinance the Staples mortgage on lot 24, but the proper inference from the evidence is that he did not have possession of the Staples mortgage when his own was written. Lots 1 and 23, apart from No. 24, were of little value, not nearly enough to secure the debt. They were both used and useful as appurtenant to the dwelling, for a yard, garden and other such purposes, with no valuable improvements. Even if lot 2 were included with 1 and 23, they would not have been sufficient security for the debt.

■ We cannot find in the evidence any plausible reason for including lot No. 2 and not lot No. 24. If Dr. Anderson had a doubt that his mortgage included lot 24, it would be difficult to find a plausible rea-

son for not satisfying his mortgage debt when he had the money, but for letting complainants have the benefit of it by replacing the house on property not covered by the mortgage, when the property described in it, especially without No. 2, was not near the amount of his debt. Complainants certainly led him to believe the mortgage covered the dwelling by having him declared in the insurance policies, both before and after the fire, to be a mortgagee of the dwelling. All the circumstances show clearly that it was mutually intended that the mortgage cover it, and if complainants had any secret knowledge to the contrary, they misled Dr. Anderson in that respect, both by their silence and by means of the insurance policies, and insurance money. Sec. 6825, Code; Tervin v. Cordova State Bank, 228 Ala. 619, 154 So. 561; Newell v. Armstrong, 230 Ala. 367, 161 So. 244.

We agree with the trial court in his conclusion in this respect as well as in respect to the want of payment of the mortgage with the insurance money.

■ On the day of the submission an amendment to the cross-bill was filed to meet the evidence, and complainants in their answer for the first time set up usury. Evidence was taken orally before the court, but complainants offered none on that issue. On the next day complainants filed a motion to permit the introduction of a bank ledger sheet showing a deposit of $400 to complainants about the date of the mortgage which, with $670 paid Staples, would make an amount of principal which in connection with the amount named in the mortgage would tend to show a charge of usury. The ledger sheet was not produced and no diligence was shown nor other evidence of usury. The court did not abuse his discretion in refusing to set aside the submission on such a showing.

■ It is also pointed out that pending the former appeal in this case there was a sale of the property under the former decree of lots 1, 2 and 23, and purchased by the executor of the will of Dr. Anderson, appellee here, and that he is now estopped to allege the error, and elected to enforce the mortgage on lot no. 2 rather than no. 24.

It appears that after the opinion and judgment of this Court on former appeal, affirming the decree on which the sale was made, an application for rehearing was made by appellants: that then appellee con-

sented to a withdrawal of that opinion, and a reversal of the judgment and remandment of the cause.

 Counsel for appellee say that they had discovered the error in the description, and sought this procedure so as not to be cut off under the principle of Davenport v. Biddle, 223 Ala. 28, 134 So. 642; Goulding Fertilizer Co. v. Blanchard, 178 Ala. 298, 59 So. 485. This was their province when approved by this Court as was done on that occasion. When the decree was reversed, since the purchaser was appellee, the effect was to restore the situation of the parties to their relative position before the sale. The sale was left without foundation on which to rest. Ivie v. Stringfellow, 82 Ala. 545, 2 So. 22; Carroll v. Draughon, 152 Ala. 418, 44 So. 553, 126 Am.St.Rep. 51; McDonald v. Mobile Life Ins. Co., 65 Ala. 358; Marks v. Cowles, 61 Ala. 299.

The principle of estoppel by election on which appellant relies (see Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513), as well as satisfaction of the mortgage by the sale under foreclosure (see Oden v. King, 216 Ala. 504, 113 So. 609, 54 A.L.R. 1413; Davenport v. Biddle, 223 Ala. 28, 134 So. 642), can have no effect when the mortgagee buys at his own sale under a foreclosure decree which is set aside by a reversal in this Court. One cannot be bound after a decree has been reversed by an election made before it was reversed to enforce it, and the satisfaction of a debt by a judicial sale is vacated when the authority for the sale has been legally withdrawn. Campbell v. American Bonding Co., 172 Ala. 458, 55 So. 306.

The fact that the reversal may have resulted from the consent of the successful party or even his effort would furnish no basis of a claim that the judgment thus reversed should have more force than when the reversal is procured over his protest. The reversal was the act of this Court, and not of the parties to the suit.

We agree with appellant and the authorities cited that after a case has been submitted in this Court it is no longer under the control of the parties. Vandiver v. American Can Co., 190 Ala. 352, 67 So. 299. But so long as it is in the power of this Court, it has jurisdiction to make an effective disposition of it. Baker Tow Boat Co. v. Langner, 218 Ala. 34, 117 So. 915.

We have reached the conclusion that the judgment of the trial court is based upon a correct interpretation of the law applied to the facts which he found from the evidence largely given orally in open court, and with such finding we discover no cause to disagree.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, Justice.

Application for rehearing overruled.

GARDNER, C. J., and THOMAS and BOULDIN, JJ., concur.