16 So.2d 17

**VAUGHN et al. v. BRUE et al.**

**1 Div. 201.**

Supreme Court of Alabama.

Dec. 16, 1943.

Wm. G. Caffey and Lyons & Thomas, all of Mobile, for appellants.

Smith, Hand & Arendall, of Mobile, for appellees.

STAKELY, Justice.

This is an appeal from a final decree of the equity court in which it is determined that the title of W. M. Seale and Frank Ladd, Sr. (appellees) to the real estate involved in the suit is superior to any title or equity which Floyd S. Vaughn and Lillie B. Anderson (appellants) might have therein. The question is whether the appellees are bona fide purchasers for value without notice under the following circumstances.

On June 7, 1915, Mary Brue and husband conveyed to Floyd S. Vaughn (one of the appellants) and Charles Anderson the lands in controversy. On the same date Floyd S. Vaughn and Charles Anderson made a contract with Mary Brue and husband that they would "at any time before the expiration of two years from the date of this instrument, reconvey to the said Mary Brue all of the above described

property upon the payment to them of the sum of $1874.48, with interest at 8% and the further payment of any additional indebtedness owing said Vaughn and Anderson," the agreement to be of no further force and effect if Mary Brue failed to make payment within the two-year period.

Claiming that Mary Brue had paid less than one-third of the indebtedness within the two-year period, Floyd S. Vaughn and Charles Anderson took possession of the lands, continued in possession and were in possession, claiming title thereto, when Mary Brue on February 6, 1939, filed a bill praying a "decree that the said Floyd S. Vaughn and Lillie B. Anderson" (the other appellant and sole devisee of Charles Anderson, deceased) "are now holding title to said lands as Trustee for the complainant and that they be required to reconvey said lands to Mary Brue." The appellants filed demurrers to this bill which were sustained by the court on May 10, 1939. The bill was amended and demurrers were again sustained on October 29, 1939.

On October 30, 1939, Mary Brue again amended her bill so as to allege in substance in the alternative that she had either paid the entire indebtedness which she claimed to be secured by the instrument which was in the form of a deed or that if she was mistaken, she offered to pay such sum as the court might find to be due and do whatever the court might decree to be equitable. The appellants refiled their demurrers to the bill as thus amended, which the court overruled on November 14, 1939.

The appellants failed to file an answer to the bill as last amended and on February 7, 1940, a decree pro confesso was taken against appellants. On March 15, 1940, on the basis solely of the decree pro confesso a final decree was rendered to the effect that appellants held legal title to the lands in trust for Mary Brue, divesting this title out of appellants and vesting the title in Mary Brue. A certified copy of this decree was recorded in the probate court of Mobile County on April 1, 1940.

On June 25, 1940, Mary Brue executed and delivered to W. M. Seale (one of the appellees) a statutory warranty deed to the property. This deed was recorded in the probate court of Mobile County on June 26, 1940. On January 28, 1941, W. M. Seale conveyed a part of the land to Frank M. Ladd (the other appellee) for $300. This deed was recorded in the probate court of Mobile County on January 28, 1941.

On July 5, 1940, appellants filed a bill of review (this suit) to set aside and reverse the decree of March 15, 1940, in the suit brought by Mary Brue against appellants. The lower court held this bill of review good against demurrer and this ruling was affirmed on May 15, 1941, by the Supreme Court of Alabama in the case of Mary Brue v. Floyd S. Vaughn and Lillie B. Anderson, 241 Ala. 322, 2 So.2d 396, 398. This court held that the bill of review properly challenged the decree of March 15, 1940, for "error of law apparent on the record."

On November 17, 1941, Mary Brue filed an answer in which she alleged that after the rendition of the decree of March 15, 1940, and after recording a certified copy of that decree on April 1, 1940, on June 25, 1940, she conveyed the property involved in this suit by deed to W. M. Seale (appellee). Copy of the deed is attached to her answer. It is a statutory warranty deed and recites a consideration of $50 and other valuable considerations.

On November 28, 1941, W. M. Seale filed a motion for leave to file a petition of intervention and attached to that motion his petition of intervention. In this petition W. M. Seale alleged that duly certified copy of the decree of March 15, 1940, was filed for record in the probate court of Mobile County on April 1, 1940, and that on June 25, 1940, he had purchased the property described in the decree of March 15, 1940, and therein declared to be vested in Mary Brue, and that he bought the same without notice of any defect in the proceedings in said cause which would render the decree of March 15, 1940, subject to be reviewed, revised or set aside on a bill of review. W. M. Seale further averred that his interest in the property might be prejudiced by a successful prosecution of the bill of review by Vaughn and Anderson and that representation of his interest by Mary Brue was inadequate.

The court granted the motion and allowed the parties ten days in which to demur to or answer the petition. Thereafter, W. M. Seale amended his petition of intervention to show that a portion of the property conveyed to him by Mary Brue and bought by him in reliance on the decree of March 15, 1940, had been

conveyed by him to Frank M. Ladd. Thereupon Frank M. Ladd filed a motion for leave to file a petition of intervention, which the court granted. The appellants filed an answer denying substantially the allegations of the petitions to intervene and putting in issue the right of intervention.

In view of our ideas about the case, we think it unnecessary to set forth any further details about the intervention proceedings except to say that after hearing a good deal of evidence presented by deposition on the issues made by the petitions and the answers thereto, the court granted the petitions to intervene, and in the same decree found that W. M. Seale purchased the property from Mary Brue by deed, dated June 25, 1940, prior to the filing of the bill of review and that said purchase was made in good faith without knowledge or notice of any defect in the proceedings leading to the rendition of the decree on March 15, 1940, and without knowledge or notice of any title or equity in Floyd S. Vaughn and Lillie B. Anderson. The court further found that Frank M. Ladd, Sr., paid a valuable consideration, in good faith, for the property conveyed to him by W. M. Seale, without notice of any defect in the title of W. M. Seale or of any defect in said proceedings.

The court decreed that the title of W. M. Seale and Frank Ladd, Sr. (appellees), respectively was superior to any title or equity of Floyd S. Vaughn and Lillie B. Anderson (appellants).

As stated, a good deal of evidence was introduced by both sides to show or deny respectively that W. M. Seale had actual notice of defects in the proceedings upon which the decree of March 15, 1940, was based. As we view the case, however, it will not be necessary for us to sift that evidence, because we think that W. M. Seale and Frank Ladd, Sr., had notice as a matter of law sufficient to preclude them from being purchasers without notice.

At the time W. M. Seale received his deed on June 25, 1940, there was no pending bill of review, since the bill of review was not filed until July 5, 1940. It is the theory of appellees that there could be no notice until the bill of review was filed and accordingly, it is the insistence of appellees that where a final decree is rendered in a cause wherein the court has jurisdiction of the persons and the subject matter, a purchaser who buys in reliance on that decree, without actual knowledge or notice of any defect in the proceedings, is protected as against any rights thereafter sought to be asserted in a bill of review. There is substantial authority to support this position. Cases which well illustrate this view are Rector v. Fitzgerald, 1894, 8 Cir., 59 F. 808; Lee County v. Rogers, 7 Wall. 181, 19 L.Ed. 160; Perkins v. Pfalzgraff, 60 W.Va. 121, 53 S. E. 913; Vyverberg v. Vyverberg, 310 Ill. 599, 142 N.E. 191; Dunfee v. Childs, 59 W. Va. 225, 53 S.E. 209; and Teel v. Dunnihoo, 221 Ill. 471, 77 N.E. 906, 112 Am.St.Rep. 192. Some of these cases involved bills of review for errors apparent on the face of the record.

However, careful consideration of these cases shows that the conclusion reached is based on the doctrine of lis pendens. They hold that since a bill of review is regarded as a new suit and not a continuation of the original suit, there is no lis pendens and therefore no notice until the bill of review is filed. There are cases which assert a contrary doctrine, for example Madeira's Heirs v. Hopkins, Ky., 12 B.Mon. 595; Clarey v. Marshall's Heirs, 4 Dana, Ky., 95; Cook v. French, 96 Mich. 525, 56 N.W. 101; McLean v. Stith, 50 Tex.Civ.App. 323, 112 S.W. 355; Debell v. Foxworthy's Heirs, 9 B.Mon., Ky., 228.

We think, however, that this case should be determined on principles which are established in this state and which are not based on the doctrine of lis pendens. Accordingly, it is immaterial that the bill of review was not filed until after W. M. Seale received his deed from Mary Brue on June 25, 1940. If these principles take no account of the pendency vel non of a bill of review at that time, it may be added that it is equally immaterial that no lis pendens notice had been filed under the statute, § 66, Title 47, Code, because these principles, which we shall now discuss, establish notice regardless of the notice that comes either from pending litigation or the recording of a statutory notice.

The title which W. M. Seale purchased from Mary Brue under the deed of June 25, 1940, depends on the decree of March 15, 1940, of which W. M. Seale, according to his own testimony, was well aware. Mary Brue was not a stranger but

a party to the litigation which resulted in that decree. W. M. Seale is charged with notice of all deeds, documents and proceedings in his chain of title and with notice of all defects in such muniments of title. His title depends on a proceeding which as a matter of law shows error apparent on its record. His title depends on a decree which on the face of the record which culminated in the decree, is subject to reversal by bill of review. Such bill can be filed within three years from the date of the decree. Mary Brue had only a defeasible title, that is a title which was subject to fall because the decree on which it rested was subject to be set aside. W. M. Seale can have no greater rights than Mary Brue.

It is argued that the Alabama authorities which we shall now cite deal with purchases made under judgments, which were reversed on appeal and cannot apply to reversal on a bill of review, as yet unfiled. But on principle, there is no difference in effect where notice is imputed not by reason of pending litigation, but because the defect is apparent on the face of the record, which is part of the purchaser's chain of title. It should be kept in mind that we are here only dealing with a bill of review for error apparent on the record. This decision is accordingly so limited.

In the case of Marks v. Cowles, 61 Ala. 299, the Supreme Court of Alabama, speaking through Mr. Chief Justice Brickell, held that the title of a stranger purchasing at judicial sale under an erroneous judgment will not be defeated or impaired by a subsequent reversal of the judgment. The court, however, further held that if a party to the suit buys at the sale, he does so subject to the risk that it will later be reversed. And the court further held that one who purchases from a party litigant, who was a purchaser at a judicial sale, is not a bona fide purchaser to be protected, but is in the same position as the party to the suit. This principle has been consistently upheld in this state since that time. The decision in Marks v. Cowles is rested not alone, if at all, on lis pendens, but on notice from the face of the record.

In discussing the question in Marks v. Cowles, supra, the court said, at pages 305, 306 of 61 Ala.: "It results from these principles that when a party becomes a purchaser of lands under an erroneous judgment or decree, rendered in his own favor, it is at the peril of having his title defeated by a subsequent reversal. The defeasible quality of his title is engrafted upon it by operation of law, of which ignorance can not be claimed by those who subsequently deal with him. If the words of his title papers expressed the defeasible quality, they would express no more than the law declares. * * * When the owner of a determinable fee conveys in fee, the determinable quality of the estate follows the transfer. * * * Practically, the principle which prevails in this State, is, that all conveyances pass the estate of the grantor, and no more— whatever are its incidents operating to defeat, or whatever contingencies may terminate it, attend it in the hands of the grantee. * * * the general principle is, that derivative titles, can not rise above and superior to their original. They do not improve by mere transfer, whether the transfer is the act of the law, or the act of the parties."

Again the court, at page 307 of 61 Ala., says on this subject in distinguishing cases in Ohio and Illinois: "If the principle is admitted, and it is admitted in the courts of Illinois and Ohio, and seems to be in the courts of Indiana, that a party purchasing under his own judgment or decree, acquires but a defeasible title, while a stranger will acquire an indefeasible title, it is difficult to understand how there can be an innocent purchaser from the party, entitled to protection which would not be extended to the party himself. We mean a purchaser without notice, actual or constructive, of the defeasible quality of the title. There can be no principle touching so nearly men's estates, more firmly established, than that a purchaser has notice of everything appearing clearly on the face of the deeds or instruments which constitute his title, forming an integral part of it. The law conclusively imputes the notice, and neither averment or proof to the contrary, can be heard. His ignorance of all that certainly appears on the face of the title papers, affecting the quality or duration of the estate, can be superinduced only by his negligence, and of that negligence, it would be unwise and unjust to suffer him to take advantage. * * * The judgment or decree, must be shown necessarily as an indispensable element of the title of the party, on the face of the title papers. And when it is shown, the defeasible quality of the

112

title appears, of which the vendee is bound to take notice."

Again the court said: "We can not perceive that a subsequent purchaser from the party, can in right or on any principle of policy, claim the protection which is extended to a stranger purchasing at a judicial sale. The prevention of the sacrifices of property at such sales, the security of titles acquired at them, does not require it. The sale is an accomplished fact, and the sacrifice, as it has been said, is realized or avoided. The party would simply be authorized to transfer a better and higher title than he acquired. Collusive transfers, defeating right and justice, would be stimulated and encouraged. And the conservative principle, intended for the protection of parties aggrieved by erroneous judgments or decrees, from sustaining irreparable loss, would be practically nullified. It is no answer to say, that he may recover of his adversary the proceeds of sale. The adversary may, as in this case, be unable to respond, and he loses his property without fault on his part. The stranger who purchases may say, you ought to have superseded the judgment, and thus prevented the sale, and saved me from parting with money, which may not be reclaimed. The adversary, can say only, by the use of an unjust judgment rendered at my instance against you, in invitum, I have obtained an advantage, which I will secure by a sale to another, and the other though he derives it from me, will obtain a better title than I had. We can not declare this to be the law of the land."

In the case of McCollum v. Burton, 220 Ala. 629, 127 So. 224, 225, the Supreme Court of Alabama while showing that the doctrine of lis pendens had no application under the facts of the case, nevertheless as to constructive notice from infirmities appearing in the chain of title said: "We recognize the well-established rule that notice is imputed to a purchaser of infirmities and incumbrances appearing in his chain of title." See also Johnson v. Thweatt, 18 Ala. 741, 747.

In the case of Abernathy v. Moses, 73 Ala. 381, 383, 384, the Supreme Court followed the case of Marks v. Cowles, saying: "The sale made by the register was not void, nor did it become void by the subsequent action of this court. We have decided that when a plaintiff becomes the purchaser under his own judgment or decree, if the judgment or decree be subsequently reversed, the title acquired by his purchase falls with it. And the same fate befalls a vendee from such purchasing plaintiff."

In Phillips v. Benson, 82 Ala. 500, 502, 2 So. 93, 95, the Supreme Court speaking through Mr. Justice Somerville restated the established law in regard to the purchase of property involved in litigation as applied to one who purchases from a party to such litigation after decree rendered and before its reversal, saying: "The settled rule in this state moreover is, that an assignee of such a title, acquired by purchase from a plaintiff, stands in the shoes of the plaintiff, and takes a defeasible title subject to avoidance on reversal, just as the plaintiff's title would have been had he not assigned it." Phillips v. Benson, 85 Ala. 416, 5 So. 78; McDonald v. Mobile Life Ins. Co., 65 Ala. 358, 362.

In the case of Wise v. Miller, 215 Ala. 660, 111 So. 913, 914, the court considered and approved the holding in the case of Marks v. Cowles, supra, saying:

"In that case the purchaser, a party, claimed title through an erroneous decree which was reversed on appeal after his purchase. The court gave its approval to the proposition that:

"'A party to an erroneous judgment or decree, purchasing at a judicial sale made under it, acquires only a defeasible title, which falls with the subsequent reversal of the judgment or decree (citing authorities.)'"

In the recent case of Brittain v. Commercial Nat. Bank, 239 Ala. 506, 510, 195 So. 739, 742, the court, citing Marks v. Cowles, supra, said: "When the decree was reversed, since the purchaser was appellee, the effect was to restore the situation of the parties to their relative position before the sale. The sale was left without foundation on which to rest."

Frank Ladd, Sr., obviously can have no greater rights than W. M. Seale from whom he purchased. We conclude that they were not purchasers without notice, but took only such title, if any, as Mary Brue had.

In view of the conclusions which we have reached, we see no reason why appellees should be denied the right of intervention which is here sustained. Mary Brue has conveyed to them her interest, if any, in the real estate involved. They, not she, are now interested in establish-

ing whatever rights she may have. Gipson v. Hyatt, 243 Ala. 118, 8 So.2d 926; 21 C.J. 341; 30 C.J.S., Equity, § 160; 47 C.J. 104, 105.

In further proceedings, the rights or interest of appellees in the land will be limited to the rights or interest therein, if any, of Mary Brue.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.