BEATTY, Justice.
This is an appeal from a judgment for the defendants in plaintiffs’ action for an injunction and damages. The cause was tried ore tenus without a jury. We reverse and remand.
The Department of Corrections of the State of Alabama conveyed by warranty deed 112.29 acres of land in Bullock County to defendant Bullock County Development Authority (Development Authority). This deed contained the following restriction:
“This conveyance is made by the grantor, the DEPARTMENT OF CORRECTIONS OF THE STATE OF ALABAMA, upon the express condition that the tract of land herein described shall be *1096 used by the grantee, the BULLOCK COUNTY DEVELOPMENT AUTHORITY, for the construction and development of a Recreation Park and the development of the balance of the property for industrial purposes and/or as the site of a proposed Veterans Administration Nursing Home or other purpose which would benefit the community as a whole. In the event the property is not used for the above-stated purposes or other purpose which would benefit the community as a whole, and is instead used for a private purpose, title in and to said property shall revert to the grantor, the DEPARTMENT OF CORRECTIONS OF THE STATE OF ALABAMA, its successors and assigns, for the same monetary consideration as stipulated in this conveyance.”
The Development Authority applied to the Department of Conservation and Natural Resources for a grant of funds to develop a park. The Development Authority also employed a landscape architect to draw up plans for the park and had a survey made by the county engineer. The landscape architect and other consultants determined that 70.96 acres of the 112.9 acre tract was feasible for the development of a recreational park. The Development Authority then conveyed 70.96 acres of the tract by warranty deed to the Bullock County Commission (Commission). This conveyance also contained a restriction:
“This conveyance is made subject to the terms, conditions and restrictive covenants contained in that certain deed wherein Grantor herein acquired the subject property which said Deed is recorded in Deed Record Book SSS at Page 946, Probate Office, Bullock County, Alabama.
“It is also understood and agreed by and between the grantor and grantee, and grantee by acceptance of this deed does acknowledge that it fully understands the terms and conditions set forth herein and does further covenant and agree for itself, and its successors and assigns, forever as follows:
“1. The property has been acquired or developed with Federal financial assistance provided by the National Park Service of the Department of the Interior in accordance with the Land and Water Conservation Fund Act of 1965, as amended, 16 U.S.C. 4601-5 et seq. (1970 ed.). Pursuant to a requirement of that law, this property may not be converted to other than public outdoor recreation uses (whether by transfer, sale, or in any other manner) without the express written approval of the Secretary of the Interior. By law, the Secretary shall approve such conversion only if he finds it to be in accord with the then existing comprehensive statewide outdoor recreation plan and only upon such conditions as he deems necessary to assure the substitution of other recreation properties of at least equal fair market value and of reasonable equivalent usefulness and location.”
The application to the State of Alabama, for the sum of $50,000, was approved; the Commission, by resolution, agreed to supply up to 50% of the funds needed to develop the park. Before any grant was awarded, however, the Commission and the Development Authority decided to reconvey the property to the Department of Corrections. Accordingly, the Commission recon-veyed by warranty deed to the Development Authority the 70.96 acres previously deeded to it, without the restrictions, and the Development Authority in turn recon-veyed by warranty deed containing no restrictions the 112.29 acres to the Department of Corrections. The deed from the Development Authority to the Department of Corrections was preceded by a resolution of the same date, January 23, 1984, containing the following language:
“BE IT RESOLVED by the BULLOCK COUNTY DEVELOPMENT AUTHORITY as follows:
“THAT WHEREAS, on the 14th day of September 1982, the Department of Corrections of the State of Alabama conveyed to the Bullock County Development Authority a certain parcel of real estate containing 112.29 acres, which *1097 property had been purchased by said Department of Corrections for use as a site for a State penal institution but which subsequently determined not to locate said penal institution on said site; and
“WHEREAS, the said Department of Corrections now desires to locate a penal institution on said site and has requested that the subject property be reconveyed to said Department of Corrections; and
“WHEREAS, the Bullock County Development Authority has determined that the location of a penal institution in Bullock County would be a valuable industry for the County and that the use of the property for this purpose would be its most beneficial use for the welfare of a majority of the citizens of Bullock County-
“NOW THEREFORE, be it Resolved by the Bullock County Development Authority that the Authority convey to the Department of Corrections of the State of Alabama that certain tract of land containing 112.29 acres more or less which was on September 14, 1982, conveyed to the Authority, the monetary consideration being the same as stipulated in the said conveyance of September 14, 1982. Be it further resolved that John Roberts, Chairman of the Bullock County Development Authority is hereby authorized and directed to execute said conveyance in the name of the Authority and Don Priori as Secretary of the Authority is duly authorized to attest the same.”
However, the deed of the 70.96 acres from the Commission to the Development Authority was not preceded by a resolution of the Commission nor by a referendum election. Following the Commission’s deed to the Development Authority, the Commission by resolution adopted February 13, 1984, “ratified and confirmed” the conveyance of the 70.96 acres to the Development Authority. Moreover, on February 13, 1984, the Commission by resolution authorized a referendum election, in conjunction with the presidential preference primary election to be held on March 13, 1984. This election was held on the following issue:
“Do you approve of the Bullock County Commission and the Bullock County Development Authority conveying to the Department of Corrections of the State of Alabama for the sum of One Dollar any and all interest they may have in 112.29 acres of land in the East Half of Section 31, Township 14, Range 24, for use as the site of a State Penal Institution?”
In that referendum, 2,486 “yes” ballots were cast and 1,189 “no” ballots were cast.
Meanwhile, on January 23, 1984, plaintiffs, citizens of Bullock County, instituted this suit to enjoin the Development Authority and the Commission from conveying any of the land previously conveyed for recreational purposes and to recover damages. By amendment to the complaint dated January 26, 1984, plaintiffs sought to have set aside any deeds between the Board of Corrections (added as a party), the Development Authority, and the Commission.
The trial court heard this ore tenus case without a jury and found that the deeds of the Commission and the Development Authority were valid conveyances, and that the Development Authority was authorized and empowered to reconvey the property to the Department of Corrections. In reaching this conclusion, the trial court made the following findings:
“The Court finds that the acceptance of the deed from the Department of Corrections by the Bullock County Development Authority dated September 14, 1982, did not constitute a dedication of the entire tract or a portion thereof exclusively for recreational purposes and that the actions of the Development Authority and the Bullock County Commission after the deed and after the property was accepted did not constitute a dedication of the 70.96 acres exclusively for recreational purposes.
“The Court finds that the acceptance of the deed by the Development Authority did restrict the use of the property so that the property could not be used for *1098 any private purpose; however, the conditions did not obligate the Development Authority to expend time and monies in developing the property in accordance with the stated purposes. The Development Authority had the right in exercising its discretion to reconvey the property to the Department of Corrections if it deemed the property should not be used for the stated purposes or if it deemed the property should be used for some other purpose which would be more beneficial to the community as a whole rather than the purpose as set out in the conditions in the deed.
“The Court further finds that Bullock County, in accepting the deed from the Bullock County Development Authority dated October 27, 1983, did not waive its right to abandon the recreational project if in its discretion it deemed some other purpose more beneficial to the community-
“The Court further finds that the actions of the County Commission and the Development Authority after the property was accepted, did not amount to a dedication of the property or a portion thereof for use solely for recreational purposes and did not estop the County Commission or the Development Authority from ‘changing its mind’ and abandoning the recreational project if in its discretion it deemed some other purpose more beneficial to the community as a whole, so long as the property was not used for a private purpose.
“The Court further finds that since the property was not dedicated to the public use or developed as a recreational facility, that Section 25-4-110 [sic, -410], Code of Alabama 1975, is not applicable.”
The plaintiffs appealed the judgment for defendants based upon these findings and contend that there was a dedication of the property by the Board of Corrections to the citizens of Bullock County limiting the use of it to recreational purposes. Whether there was such a dedication is the central issue here.
Plaintiffs apparently base - their case upon the doctrine of common law dedication. Such a dedication requires an intention of the owner to dedicate the property and an acceptance by the public or by some authorized person or body of persons acting in its behalf. Smith v. City of Dothan, 211 Ala. 338, 100 So. 501 (1924). Dedication is an unequivocal, affirmative act and must be shown by affirmative evidence or its equivalent. Burleson v. Town of Hamilton, 213 Ala. 198, 104 So. 253 (1925). O ’Rorke v. City of Homewood, 286 Ala. 99, 104, 237 So.2d 487, 491 (1970), reiterated these principles:
“To establish a dedication, the clearest intention on the part of the owner to that effect must be shown, and the evidence must be clear and cogent, and the acts of the owner relied on to establish a dedication must be unequivocal in their indication of the owner’s intention to create a public right exclusive of his own. [Citations omitted.]”
This Court has recognized that an intent to dedicate may be shown by a deed to an individual in which the owner declares that part of his land is reserved for public use. Hall v. Polk, 363 So.2d 300 (Ala.1978), following Davidson v. City of Birmingham, 212 Ala. 123, 101 So. 878 (1924).
The language of 23 Am.Jur.2d Dedication § 28 (1983) at 25, 26, is instructive on the application of these principles:
“A common form of dedication is by a deed setting forth the exact purpose for which the land is conveyed, and a record thereof, together with a plat of the property. The deed may be made to a designated grantee and convey in trust for the public either the fee or an easement, or it may be made for a designated purpose, without any grantee. The form of deed, as a quitclaim deed or a warranty deed, is not controlling, and use of the word ‘dedicate’ in the deed is not decisive of the character of the conveyance. If the deed contains a clause to the effect that the conveyance is made on the condition that the land conveyed be forever kept open for a public use, and if it reserves a *1099 portion of the land for certain public purposes, there is an express dedication.”
Under the authorities, it is clear that there was an intention on the part of the Board of Corrections to dedicate this 112.29 acres to the Development Authority “for the construction and development of a Recreation Park and the development of the balance of the property for industrial purposes ... or other purpose which would benefit the community as a whole.” Only upon its use for a private purpose was it to revert to the grantor Board of Corrections.
Was there an acceptance of the property by the Development Authority? In Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 568 (1895), it was stated:
“To be effective and valid, a dedication ... must be accepted, and such acceptance may be shown either by some positive conduct of the proper public officers, evincing their consent in behalf of the public, or may be inferred from official acts of implied recognition on their part... Gage v. Railroad Co., 84 Ala. 224, 4 So. 415.”
Here it is clear that the Development Authority acted upon its deed of the land in a manner clearly and unequivocally denoting an acceptance. An official of the Development Authority, Mrs. Annie Mae Turner, testified concerning the Development Authority’s negotiations with the Board of Corrections, and testified further that the deed was filed and that the Development Authority accepted the property. The Development Authority proceeded to obtain funds for the land to be developed as a recreational site, it employed a landscape architect, who drew up plans, and it used county employees and equipment to do landscaping work on the premises. And what is more, the Development Authority manifested its ownership and control over the property, as a result of its acceptance, by executing its own deed of 70.96 acres of the tract to the Commission, inserting in that deed the restrictions contained in its own deed form the Board of Corrections and adding a new and different restriction. Such positive conduct evincing its acceptance of the property is in no way mitigated by the later failure to pursue funds or by the Development Authority’s belated change of mind. It is clear from its undisputed official acts following the receipt of the deed of the Board of Corrections that the Development Authority had accepted the dedication of the land.
Moreover, it is clear from the record that these actions were met with approval at the time by the members of the Commission:
“Q. What do you recognize that to be?
“A. [Mrs. Turner] This is a drawing of the site on U.S. 82, the 112 acres that we asked the County Engineer to develop. It contains an outline of the proposed site for a public park and proposed site for industrial development.
“Q. How much of that acreage was set aside for a recreational park?
“A. Approximately 71 acres.
“Q. And this was prepared at the request of the Development Authority?
“A. Yes, sir.
“Q. Was that later shown to the county commissioners?
“A. Yes.
“Q. Did they concur in it?
“A. Yes, we deeded the land to—
“Q. So, at that time this was prepared, it was prepared by the County Engineer?
“A. That’s right.
“Q. Do you know whether or not it was prepared on county time or did he do it on his own time?
“A. No, it was prepared on county time.
“Q. So, did the county expend any other funds in the development of that park?
“A. I don’t know of any.
“Q. Did they have workers out there?
“A. During the archaeological survey there was a — some instrument to level off the land for the digging.
“Q. Was that county equipment?
“A. Yes.
*1100 “Q. To your knowledge, was it a county worker that was operating the equipment?
“A. Yes.
“Q. Was this done prior to the time that the land was deeded to the county? Prior to that time?
“A. I would have to check my dates on that. It was around about the same time, probably so.
“Q. As a matter of fact, the county did some of the work on that park prior to them actually receiving a deed to the—
“MR. BRIGHT: I object, Your Honor, he is leading.
“THE COURT: Try not to lead. Go ahead.
“MR. OSBORNE: Okay. Do you know whether or not the county expended funds on the development of this property for a recreational park prior to the time in which it actually received the deed for it?
“A. No, I could look it up but I do not know.
“Q. Is it possible for you to determine by looking at the material you have here today?
“A. Probably. It would take me a little time to look it up.
“Q. About how much time would you say?
“A. I don’t know.
“Q. Take a glance and see if you can find it. Would it help if I showed you a deed?
“A. No, I have a deed, so let me just think a minute because I want to be sure and tell you the truth.
“Q. Okay.
“MR. OSBORNE: While she is doing that, we offer Plaintiffs Exhibit 2. Go ahead.
“A. Okay. The deed was drawn on October the 27th of 1983 and this is 71 acres from the Development Authority to the county. Okay, then let me get the archaeological survey and see when that work was done. (Pause) Okay, there was some preliminary work done in August of ’83 but there were no — there was no help from the county in the preliminary work because the archaeologists went out and looked over the site and did some digging on their own. In the actual survey in which they used county equipment was November of 1983. So, it appears that there was no county equipment used prior to October the 27th of 1983.
“Q. Let me show you what we have already had introduced as Plaintiff’s Exhibit No. 2, and I show you the date of preparation of that — of the map was August the 23rd of 1983.
“A. That’s right.
“Q. Now, this was done by the County Engineer?
“A. That’s right, in the office. He didn’t have to go out there. He looked at the landscape architect’s drawings, and at my request, he simply put this into a form for me that would be appropriate for the proposal — the application.
“Q. And this was done prior to the time that the county—
“A. That’s right. In other words, the County Engineer, to do this, did not have to go out with his surveying equipment. This had been done by the landscape architects.
“Q. Let me show you another document and ask you if you can recognize it?
“A. Are we through with this architectural—
“Q. Yes, ma’am, for the time being. What do you recognize that to be?
“A. This is a pre-application. When you apply for funds through the State Parks Division you have to submit a pre-application before you go into the full application. So, this is the pre-application.
“Q. When was that pre-application dated?
“A. May the 31st, 1983.
“Q. Who signed that application?
“A. Commission Chairman John Waters.
*1101 “Q. Was that the one that was actually submitted?
“A. Yes. Now, we have another full application. When we were told that this appeared to be good enough to submit an application, then we did submit that, and I have the application here. Would you like to see it?
“Q. No, thank you. It’s my understanding that the application was not actually submitted because the agency was told not to submit it.
“A. No. We submitted them. They were submitted.”
Not only did the Commission thereafter receive the deed for the 70.96 acres, but by resolution it also agreed to supply a substantial sum of the money needed to develop the park.
The 70.96 acres having vested in the Commission, how might the county alien it? The legislature has provided a specific procedure for such action in Code of 1975, § 35-4-410 through -412:
“§ 35-4-410
“The governing bodies of counties, cities, towns and other subdivisions of the state shall have full power and authority to alienate public parks and playgrounds, other public recreational facilities and public housing projects on such terms as may be agreeable to them, provided such alienation is first approved by a majority of the qualified electors of the county, city, town or subdivision affected thereby voting in a referendum election held for such purpose.”
“§ 35-4-411
“When the county commission, or the council or like governing body of a city or town, or governing body of any other subdivision shall determine to alienate any public improvement described in section 35-4-410, it shall adopt a resolution or ordinance to that effect, describing the nature and extent of the proposed conveyance, the consideration therefor, if any, and the names of the parties involved. Said ordinance or resolution must be published once a week for four consecutive weeks in some newspaper published in the county, city or town, and, if no newspaper is published therein, it may be published in a newspaper having general circulation in the county, city or town.”
“§ 35-4-412
“The county or municipal governing body shall provide for a referendum election to be held on the proposal made in the resolution or ordinance, and the resolution or ordinance shall be effective only in the event the proposal is approved by a majority of the qualified electors of the county, city or town or other subdivision affected thereby voting in such referendum election.”
These statutes clearly provide that a county wishing to alien a public park or other recreational facility must first adopt a resolution describing the proposed conveyance, publish that resolution once a week for four consecutive weeks, and then hold a referendum election. Surely, in this case, the officials of the Commission were aware of this requirement, because they made an attempt to comply. That attempt, alas, was too little and too late. The resolution and the referendum were held after the conveyance by the Commission, not before, and the record fails to disclose that the § 35-4-411 notice requirement was fulfilled. Thus, the purported reconveyance of the 70.96 acres from the Commission to the Development Authority was void and of no effect.
Insofar as the conveyance of the Development Authority to the Board of Corrections is concerned, we look to the restriction in the deed from the Board of Corrections to the Development Authority. That restriction refers to the “development of a Recreation Park and the development of the balance of the property for industrial purposes and/or as the site of a proposed Veterans Administration Nursing Home or other purpose which would benefit the community as a whole." (Emphasis added.) Thus, the Development Authority could use this portion, “the balance,” for a “purpose” which would “benefit the community as a whole.” The authorities of *1102 the Development Authority, the Commission, and the majority of the voters in the referendum have concluded that a Board of Corrections facility located upon this industrial site would benefit the community, and such a conclusion would not, as a matter of law, be inconsistent with the terms of the deed's restriction. Accordingly, as to the approximately 41 acres of the site not pertaining to the recreation park, the deed from the Authority to the Board of Corrections was effective to convey that 41 acres. A deed purporting to convey a greater title, or more land, than the grantor possesses or owns, conveys such title and land as the grantor possesses or owns. Vaughn v. Brue, 245 Ala. 107, 16 So.2d 17 (1943); see also 23 Am.Jur.2d Deeds § 336 at 297 (1983).
It follows that the trial court’s judgment must be reversed and the cause remanded for further proceedings consistent with this opinion. It is so ordered.
REVERSED AND REMANDED
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.